**OFFICIAL CREDITORS' COMMITTEE, Plaintiff,**

**v.**

**The LIBERAL MARKET, INC., Defendant.**

**In the Matter of The LIBERAL MARKET, INC., Debtor.**

**Bankruptcy No. 3–81–00305. Adv. No. 3–81–0372.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 24, 1981.

See also, Bkrtcy., 11 B.R. 742.

Jay A. Rosenberg, Cincinnati, Ohio, Leon C. Marcus, New York City, for Creditors' Committee.

Paul L. Horstman, Peter Donahue, Dayton, Ohio, for debtor/defendant.

Ira Rubin, Dayton, Ohio, Examiner.

R. P. Cunningham, Columbus, Ohio, for Malone & Hyde.

Sid Beck, Indianapolis, Ind., for Schear Group, Inc.

## PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon an Application filed on 3 June 1981 by the Creditors' Committee alleging cause for the appointment of a Trustee, or, in the alternative, conversion to a case under Chapter 7 "because there is no possibility of the Debtor proposing a Plan of Reorganization acceptable to the Official Creditors' Committee." At a hearing set on 10 June 1981, the Court *sua sponte* over objections by the Committee converted the proceeding to an adversarial process under Rule 914, ordering responsive pleadings.

An answer was filed on 2 July 1981 by Debtor; and, a motion for a continuance for further pretrial discovery on 21 July 1981 (which was denied).

Plaintiff filed a Trial Memorandum on 30 July 1981; the evidence was adduced at a trial on 30 July 1981 and 6 August 1981; and Debtor Defendant filed its post-trial brief on 14 August 1981.

## FINDINGS AND CONCLUSIONS OF FACT

In addition to the case record, of which the Court takes judicial notice, the evidence establishes the following adjudicative facts, to-wit:

The voluntary petition under Chapter 11 was filed on 4 February 1981, following long and protracted economic difficulties, including vitriolic negotiations with labor unions over collective bargaining agreements.

By order entered 3 March 1981, upon consent of Debtor in Possession, all business operations were terminated and the subsequent activities to date have been concerned with the liquidation of all assets, including real estate leases in numerous shopping areas. All of the more viable locations have been sold, leaving a few sites only of marginal sale value.

On 4 March 1981 United Food and Commercial Workers Union Local 1552 and Amalgamated Food & Allied Workers District Union No. 430 filed an application for the appointment of an "Operating Trustee", which cause was later joined by the Creditors' Committee.

After several hearings, a decision and order was entered on 20 March 1981, 11 B.R. 742 (Bkrtcy.) appointing Ira Rubin, as Examiner, who has done a very commendable job, endeavoring to investigate a history of very complex business activities, including absentee bookkeeping and accounting, and business records often quite deficient. Payroll and accounting services were handled through Financial Management Service of Baltimore, Maryland. The last inhouse controller was essentially an errand clerk for the president and general manager.

The court finds that the criticism by Debtor in Possession of the Examiner's discovery methods to be an excess of righteous indignation, since his function is not one to foster symbiotic relationships. He has by necessity and the nature of his office supplied background details to a very capable Creditors' Committee, which has performed far beyond the endemic lassitude so frequently a burden to the Chapter 11 process.

The factual determination made by the court in the March 20 decision need not be reiterated, except to note that upon the record at that time a finding of cause for the appointment of a Trustee as postulated by the applicants could not be made under 11 U.S.C. § 1104(a)(1). In light of the facts that there was then no intention to reopen for business, this Court appointed an examiner, with qualifications and background in such matters, and expanded his authority beyond purely investigative duties to include the monitoring of funds and supervising the business in a watch-dog capacity. This court, nevertheless, issued the *caveat* that the Debtor would be thereby permitted

to retain the statutory right to first submit a plan of reorganization. (The Debtor's Plan of Reorganization was filed on 29 July 1981).

The former controller is the primary source of the facts giving rise to the instant proceeding. He testified at great length as to his justifiable apprehensions concerning misappropriated funds and fraudulent practices by the current management of the Debtor in Possession. He testified about the alleged misappropriation of proceeds from the sale of frozen turkeys in April 1981; from funds transferred to a former company attorney (the question of reasonableness of the fees is not now *sub judice*); of cash funds placed temporarily in a safety deposit box in a Middletown bank; of certain leased equipment; of office furniture removed by Harry, Herbert, and Gene Schear; funds derived from a "coupon redemption scheme" during January, February and March; and the mysterious removal of certain store fixtures—all testimony of which failed to demonstrate operable fraud, dishonesty, incompetence or gross mismanagement in the operation of the business by Debtor-in-Possession.

The facts involving two business transactions, demonstrated by clear and convincing evidence, cannot so easily be overlooked. Both occurred shortly after the assets were under the exclusive jurisdiction of the Court, and during a period when cash funds were critical, necessitating daily trips to Cincinnati stores not being struck by the labor unions. The inability to replace inventory was then critical.

In early February, Debtor-in-Possession's President "loaned" $70,000.00 to Sherbrook Management, Inc., for a "few days" pending the closing of a real estate transaction. The funds were removed by wire transfer from Liberal's payroll account in the Maryland National Bank to the bank account of Sherbrook Management, Inc. of Florida. The funds were returned by wire transfer on 20 February 1981. No business purpose has been demonstrated for this transfer to a "family" corporation and no income was even derived for the use of the funds.

Even though no permanent harm resulted to the creditors of the instant reorganization case, the diversion of such funds bespeaks a callous disregard of the fiduciary duties incumbent upon the officers of the Debtor-in-Possession.

The other fund transfer has been attributed a pseudo-business purpose. Substantial disbursements were consummated after the court jurisdiction attached on 4 February 1981 to salaried employees, including management, for "vacation pay". Supposedly, these unauthorized checks were delivered to induce key employees to stay with the company, further demonstrating a lack of awareness by the president of his court fiduciary duties and the reliance by the Court on his superintendency under court jurisdiction.

## DISCUSSION AND CONCLUSIONS OF LAW

The prospects of a successful reorganization plan become less optimistic as the case administration progresses. It is difficult to believe that any plan short of the influx of fresh capital would ever muster both the best interests and feasibility tests, without present regard to the fair and equitable requirements. *Contra to In Re L. S. Good & Co.*, 8 B.R. 312 (Bkrtcy.), such facts do not dictate the appointment of a trustee since a plan of reorganization has been filed herein.

Even though the case seems to be directed toward conversion to Chapter 7 administration under 11 U.S.C. § 1112(b) for lack of a reasonable likelihood of rehabilitation or inability to effectuate a plan, the facts *sub judice* render such a conclusion as premature. Only the Debtor and interested classes can at this junction address these prospects. Sufficient proof has not been submitted for a judicial mandate.

■ It must be reemphasized, nevertheless, that the appointment of a trustee in a Chapter 11 reorganization case should not be treated as a short cut to an early and presumptuous delivery of the assets of an entity seeking relief to the creditors. So

long as the assets are protected and preserved under court auspices, the combined wisdom of all interested parties should be combined to seek solutions and enhance values.

The interested parties have very ably researched and digested recent case precedents as to whether the appointment of a trustee upon a finding of fraud, dishonesty, incompetence, or gross mismanagement as delineated under Code § 1104(a)(1) is permissive or mandatory.

Without an exhaustive analysis of the fact distinctions, we note that the cited cases deal with general discussions of the necessity for the appointment of trustees to afford protections not here pertinent. These citations (*In Re The McCordi Corporation, 6 B.R. 172, CCH Bkr.Rptr. ¶ 67612 (Bkrtcy.); In Re Main Line Motors, Inc., 9 B.R. 782, CCH Bkr.Rptr. ¶ 68046 (Bkrtcy.); In Re Anchorage Boat Sales, Inc., 4 B.R. 635, CCH Bkr.Rptr. ¶ 68099 (Bkrtcy.)*) do not discuss the question of the needed powers of a Trustee vis-à-vis the economic costs of the purposes to be accomplished, although this Court concurs with the findings that there must be clear and convincing evidence to exercise an "extra-ordinary remedy".

This court repeats its earlier opinion that the primary thrust of the section is "the interests of creditors, any equity security holders, and other interests of the estate . . . . " Obviously, a finding of operable fraud, dishonesty, incompetence or gross mismanagement . . . or similar cause" reflects directly on the interests of creditors. These words, nevertheless, cannot be read to the exclusion of the interests being protected, which in final analysis is the quantum of the estate remaining for distribution.

■ We are constrained, therefore, to look primarily to the protection of the creditors and the maximization of the estate. From the facts we conclude that the competence of management has been demonstrated. Mismanagement is now moot because the business operation has been terminated by court authorization. Gross mismanage-

ment did exist before the business was terminated, as evidenced by the mishandling of estate funds; but, fortunately, there is no residue of harm under the doctrine of *de minimis not curat lex.*

■ There are insufficient facts to demonstrate fraud or dishonesty. The books of account make no attempt to conceal the facts now extant. We concur with the decision in *In re LaSherene, Inc., 3 B.R. 169 (Bkrtcy.N.D.Ga.1980)* that slight evidence of mismanagement is not controlling, and we find management herein to be competent. See also, *In Re George E. Eichorn, 5 B.R. 0755 (Bkrtcy.D.Mass., 1980).*

■ Other than the exorbitant expenses engendered by the appointment of a trustee, short of conversion to a Chapter 7 administration, the issue now justiciable is what purpose would be realistically served.

The primary remaining functions to be served under Chapter 11 are the processing of a plan of reorganization, and the prosecution of numerous adversarial proceedings brought in behalf of creditors against the stockholders of debtor and allied entities.

Without further reference to the economic costs of a trustee appointment, it is concluded that the appointment of a trustee would now serve no worthwhile purpose in the prosecution of the pending adversarial suits, and might even be counter productive in this regard.

Attention is directed to the purposes and powers of a trustee appointed pursuant to 11 U.S.C. § 1106. A careful reading reveals that the enumerated powers enumerated and conferred from 11 U.S.C. § 704 very carefully withholds those of § 704(1), which is to "collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest." Until a trustee is appointed under Chapter 7, a serious question is posed as to the rights and powers conferred on a Chapter 7 trustee under 11 U.S.C. § 544. Such very specific inclusions and exclusions in 1106(a) would by

sound statutory construction seem to control over the general provisions such as found in Section 103(a) that incorporate Chapters 1, 3 and 5 in Chapter 11.

As the examiner is now constituted in this case, however, no question is raised because litigation is in process conformably to the previous orders entered herein, supplanting the inherent conflicts of interest of the Debtor and Debtor-in-Possession.

■ In short, the appointment of a trustee is a deliberative judicial function and not a ministerial act lightly made to commandeer the assets for immediate court deployment.

Juxtaposed to the vanity of appointing a Chapter 11 Trustee, it is important to note the protection already afforded to all interested parties by previous court orders and the fact that an able Examiner has already spent months in investigations and no doubt is now ready to file an exhaustive report.

In order to minimize costs and preserve the estate, the Creditors' Committee and the Examiner have heretofore been authorized and empowered "to jointly commence and prosecute in the name and on behalf of the Debtor or Debtor-in-Possession, any action that the Debtor-in-Possession would be authorized to commence and prosecute in its own right, including but not necessarily limited to actions to recover preferential transfers, fraudulent transfers, transfers made after the filing of the petition herein, or to otherwise recover any property of the Debtor or Debtor-in-Possession."

Furthermore, the Examiner has been authorized to enter an appearance generally in all proceedings in this case, and has been designated as a party in all proceedings, as has the Creditors' Committee and its attorneys. Consequently, it is

ORDERED, ADJUDGED AND DECREED, that cause does not now exist for the appointment of a Trustee under 11 U.S.C. § 1104(a)(1) and such an appointment would not now be in the interests of creditors, and other interests of the estate under 11 U.S.C. § 1104(a)(2) economically or procedurely.

ORDERED, that the issue raised as to conversion to Chapter 7 administration should be, and is hereby, held under consideration for further evidence of cause under 11 U.S.C. § 1112, until further order herein.

ORDERED, that upon the application filed 7 August 1981, by the Creditors' Committee the executive, administrative and operating costs of the Debtor in Possession should be, and are hereby, adjusted to reflect the minimal duties necessary since the closing of the business and the sale of all major assets, and the Debtor in Possession is directed to reduce the salary of the president, 55% as of August 15, 1981, until further order.