Melvin Lashner, Philadelphia, Pa., for petitioner.

Leon Forman, Philadelphia, Pa., for respondent.

### OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently before this Court is an application for the appointment of a trustee pursuant to § 1104 of the United States Bankruptcy Code. The application was filed by the Official Unsecured Creditors' Committee against F. A. Potts and Company, Inc. and G. M. P. Land Company, Inc., debtors in a jointly administered Chapter 11 proceeding. The debtors filed a reply in opposition to the application. Citibank, N.A., European American Banking Corporation and Ransomes and Rapier, Limited jointly filed a "response of certain secured creditors in support of the application." Hearings were held on February 19, February 24, February 26 and March 1, of 1981 on this matter. Based upon the record estab-

**In re F. A. POTTS & CO., INC., and G. M. P. Land Company, Inc., Debtors.**

**Bankruptcy No. 81–03639 T.**

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 11, 1981.

**4**

lished by the hearings, we will deny the application to appoint a trustee.[1]

## FACTS

F. A. Potts and Company, Inc. (hereinafter, "Potts") is a broker in coal which filed its petition under Chapter 11 of the Bankruptcy Code on September 11, 1981. G. M. P. Land Company, Inc. (hereinafter, "GMP") is a wholly owned subsidiary of Potts whose principal business is the ownership and leasing of coal lands. The land is leased to two subsidiary corporations and subleased to various investment groups. These groups have the coal mined by Barren Coal Company, the stock of which is owned by an employee of Potts, Mr. Edward Padinske. The coal is sold by the investors to Potts. Potts sells the raw coal to Swatara, a coal processing company known in the industry as a "breaker." Swatara processes the coal and re-sells it to Potts, which markets it. Potts, GMP and Swatara are owned by Mr. Karl Goos or members of his immediate family.

## DISCUSSION

The Official Unsecured Creditors' Committee (hereinafter, "the Committee") filed an application for an appointment of a trustee in the instant case alleging that Potts' pre-petition and post-petition actions indicated a conflict of interest and fraud. The appointment of a trustee is governed by the provisions of 11 U.S.C. § 1104, the text of which follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of a debtor by current management, either before or after the commencement of the case, or similar cause, but not including the

number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

The legislative history of this section states that the court "may order appointment only if the protection afforded by a trustee is needed and the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded." House Report No. 95–595, 95 Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News p. 5787. The courts which have ruled on the question of the appointment of a trustee have agreed that it is an "extraordinary remedy." *In re Hotel Associates*, 3 B.R. 343, 345 (Bkrtcy.E.D. Pa.1980); *Official Creditors Committee v. Liberal Market*, 13 B.R. 748, 751 (Bkrtcy.S. D.Ohio 1981); *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635, 644 (Bkrtcy.E.D.N.Y. 1980). The Committee contends that the fact of the identity of ownership of the debtor corporations and Swatara should result in our finding as a matter of law that Potts cannot engage in arms length transactions with Swatara consistent with the interests of the creditors. They also advance the relationship between Mr. Edward Padinske as owner of Barren and employee of Potts as proof of a conflict of interest. However, the fact that a corporation engages in business with subsidiaries or related corporations does not de jure establish a conflict of interest. *In re Bel Air Associates, Ltd.*, 4 B.R. 168 (Bkrtcy.W.D.Oklahoma 1980). In the case of *In re Concord Coal Corp.*, 11 B.R. 552 (Bkrtcy.S.D.W.Va.1981), which the Committee relies upon, Judge Flowers found that the controlling owner of the debtor corporation also owned, wholly or in part, companies which *competed* with

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

the debtor for business. He also found that there was sufficient doubt about the owner's ability to maintain the confidence of the secured creditors in order to continue the business operations so as to justify the appointment of a trustee. *Supra* at 554. We have no evidence on the record before us to demonstrate that the debtor corporations are suffering financially or otherwise because of management decisions which favor the interests of the other Goos' holdings. Neither has there been testimony from the secured creditors expressing skepticism about the debtor's ability to maintain its operations.

The Committee alleges two instances of prepetition fraud as the basis for a trustee appointment under 11 U.S.C. § 1104(a)(1). The first involves the sale of approximately 52,000 tons of fine grade coal from Swatara to Potts to several unrelated local creditors of Potts', which was negotiated immediately prior to the filing of the Chapter 11 petition. Potts owed these local breaker companies approximately two and a half million dollars ($2.5 million). In order to cancel this indebtedness, Potts entered into an agreement with the companies whereby they agreed to accept the coal in lieu of payment. Potts then arranged to purchase the coal from Swatara in exchange for the cancellation of $2.5 million indebtedness out of a total of four million dollars ($4 million) which Swatara owed Potts. The testimony from the Committee's witness, Mr. Gillis, and from Mr. Goos was that the coal involved in this transaction was not readily marketable. (N.T. p. 77, 2/19/82 and N.T. p. 66, 2/24/82). There was also testimony from Mr. Gillis establishing that Swatara had a negative net worth and that it did not have the present ability to pay its indebtedness to Potts (N.T. p. 100, 84, 2/19/82). In light of these facts, we cannot conclude that the creditors of Potts were harmed in any way by this particular transaction. Potts was able to eliminate an indebtedness of $2.5 million at the expense of an apparently uncollectible account receivable in the same amount. The question of preferential transfer to these local companies is not before this Court. We are examining the transaction under the standards for fraud.

11 U.S.C. § 1104(a) does not define fraud. The cases in which fraud on the part of the debtor in possession justified the appointment of a trustee are not numerous and rest on clear and convincing facts. For example in *Matter of McCordi Corp.*, 6 B.R. 172 (Bkrtcy.S.D.N.Y.1980), Judge Schwartzberg stated:

[T]here being ample proof to conclude that the debtor abused its overdraft privilege by submitting covering checks drawn on an account with insufficient funds so as to obtain overdrafts deceitfully, the court must appoint a trustee... *supra* at 178.

In *Official Creditors' Committee v. Liberal Market*, 13 B.R. 748 (Bkrtcy.S.D.Ohio), the Court found that the transfers of funds from the debtor corporation to a family corporation and to salaried employees including management indicated a callous disregard for the fiduciary responsibilities of the debtor but did not demonstrate fraud or dishonesty.

The elements of fraud under Pennsylvania common law include "a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from acting thereon "to his detriment. *Seligson v. Plum Tree, Inc.*, 361 F.Supp. 748 (E.D.Pa.1973). This definition echoes that used by this Court in determining the dischargeability of a debt where fraud is alleged. *In re Barrett*, 2 B.R. 296, 298 (Bkrtcy.E.D.Pa.1980). The transaction between Potts, Swatara and the local breakers was not fraudulent as to any party under any criteria for fraud, pursuant to either statutory or established case law.

The Committee also alleges that Potts' business arrangements with two shipping companies were fraudulent. Beginning in July of 1981, Potts contracted with companies in Korea for the sale of coal. The ocean transport contracts for moving the coal were handled by a broker, Overseas Marine, through a bidding process, common to that industry. The shipping companies gave Potts a pre-paid bill of lading which

was negotiated into cash and resulted in revenue to Potts in the approximate amount of three million five hundred thousand dollars ($3.5 million). Potts did not apply any of these funds to pay the shipping charges. Although the Committee's application alleges that Mr. Goos represented to the shipping companies that they would be paid immediately out of the letters of credit obtained on the strength of the pre-paid bills of lading, there is no evidence on the record to support this allegation. Mr. Bruce Schuck testified on behalf of Pan Ocean Bulk Carriers and Young Hwan Jang testified on behalf of Korea Shipping America. Neither gentlemen testified that Mr. Goos had induced them to bid on the Potts contract by promising immediate payment upon receipt of the letters of credit. To the contrary, there was uncontradicted testimony from Mr. Goos that as a matter of practice Potts paid the shipping charges on each ocean cargo from the proceeds of the succeeding sale. Mr. Jang and Mr. Goos testified that Potts was continuing to try to arrange future sales from which to generate cash to pay Pan Oceanic and Korean American until the date of the filing of the Bankruptcy. The record before this Court does not support a finding that Mr. Goos knowingly induced the companies to bid on the shipping contracts with intentionally false statements as to the time and method of payment. The element of deliberate deception which underlies fraud is not easily susceptible to proof. Where the record is totally silent on this point, however, the Court cannot infer the necessary scienter. *Ratay v. Lincoln National Life Insurance Company*, 378 F.2d 209, Cert. den. 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465, appeal after remand 405 F.2d 286 (3rd Cir. 1967).

Again we note that although none of the disbursements of the revenue generated by these contracts personally profited any member of the Goos family, there may be preferential transfers involved which we are not ruling on today. This issue can be raised by the Committee if it appears to have grounds for avoidance.

The post-petition actions of the debtors which the Committee complains of are the continuing business relationship of Potts with its related non-debtor corporations and the delivery of the fine grade coal which was the subject of the pre-petition transaction between Potts, Swatara and the local breakers. On the first point, we reiterate our finding that there is no evidence that Potts is being drained financially to the creditors' detriment for the benefit of Swatara. No testimony was presented to challenge the fairness of the price structure between the companies. The day to day management of Swatara is in the hands of its former owners under a long term management contract and the cooperative nature of their relationship with Potts appears to enhance the possibility of continued smooth operations of the debtors rather than to hamper it.

On the question of the transfer of the fine grade coal pursuant to the pre-petition contract, we reserve any ruling as to whether the transfers are avoidable and find that the debtors' actions do not rise to the level of fraud in this matter.

The Committee presented testimony and a report by the accounting firm of Coopers and Librand on the issue of the adequacy of Potts' books and records, although the application for the appointment of a trustee did not allege this as a ground for the appointment. We are aware that several Courts have determined that inadequate books and records of a debtor-in-possession may establish the need for a trustee. However, the facts in the cases cited by the Committee are easily distinguishable from those in the case at bar. Our colleague Judge Goldhaber recently appointed a trustee in *In re Philadelphia Athletic Club*, 15 B.R. 60 (Bkrtcy.E.D.Pa.1981). In that case, the assets of the debtor corporation had been commingled with that of its parent as of 1973 and no separate books, records or tax returns had been prepared since then. Judge King, in one of the earliest decisions on this issue, appointed a trustee in *In re Hotel Associates*, 3 B.R. 343 (Bkrtcy.E.D.Pa. 1980) because the debtor did not maintain "the minimum operating procedures and

controls which are absolutely essential to an adequate hotel operation." *Supra* at 345. There was no testimony that the books and records of Potts are inadequate. The accountants were able to trace all of the transactions in which they were interested through the accounting system at Potts, including specifically, the Swatara transaction and the shipping transactions. The Committee appears to object to the fact that Potts does not control the record-keeping for all of the companies involved in the chain of its operations, i.e. Swatara and Barren. If Potts did exercise this type of control it would indicate the conflict of interest which the Committee complains of in its application. Each company maintains its own records and the auditors found no evidence of questionable accounting.[2] The record of the hearings does not establish the need for a trustee because of problems with the debtors' books.

On a related point in its brief, the Committee raises the issue of the competency of the Potts management, citing the failure of the company to put its drag-line into operation as an example of lack of business acumen. We will note only that the evidence presented at the hearing established the competence of the management of Potts, Swatara and Barren.

In summary, the Committee has not proven fraud, dishonesty, incompetence or gross mismanagement such as to warrant the appointment of a trustee under § 1104(a)(1). There is a strong presumption that a debtor remains in possession absent a showing of need. *In re Eichorn*, 5 B.R. 755 (Bkrtcy.D.Mass.1980). § 1104 (a)(2) allows the appointment of a trustee without a showing of wrong-doing on the part of the debtor if the interests of creditors and equity security holders would benefit from such appointment. These interests are best advanced by the continued operation of the business. We note that Mr. Goos is experienced, competent, has built up good will, and has able associates in management positions. The industry involved is a complex one. The expense of a trustee is not to be lightly thrust upon a struggling corporation. *In re Hotel Associates*, 3 B.R. 343, 345 (Bkrtcy.E.D.Pa.1980). Based upon all of these facts we find that the appointment of a trustee in this matter would not be in the best interests of creditors and equity security holders or other interests of the estate. On the basis of the record before us, the appointment is not warranted under either subsection of 11 U.S.C. § 1104(a).

---

2. Swatara had not posted its books for 1981 at the time of the audit but this is a matter of double entry bookkeeping.