**In re Albert J. HARLOW, Jr. (Jointly Administered with Harlow, Inc.), Debtor.**

**Bankruptcy No. 82–03573G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 29, 1983.

Joseph S.U. Bodoff, Philadelphia, Pa., for debtor, Albert J. Harlow, Jr. (Jointly Administered with Harlow, Inc.).

Paul I. Guest, Jr., Guest & Greene, King of Prussia, Pa., for Irwin & Leighton, Inc.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge:

The case at bench presents two issues. The first is whether a trustee should be appointed to administer a corporate reorganization pursuant to 11 U.S.C. § 1104 of the Bankruptcy Code ("the Code"). The second is whether we should grant a creditor's application for appointment to the Committee of Unsecured Creditors ("the Committee"), pursuant to 11 U.S.C. § 1102(c). For the reasons stated herein, we will deny both applications.

The facts of the case are as follows:[1] On July 30, 1982, Harlow, Inc., ("the corporate debtor") filed a petition for relief under chapter 11 of the Code and Albert J. Harlow, Jr. ("the individual debtor") filed a similar chapter 11 petition. An alleged creditor, Irwin & Leighton ("I & L"), was not listed among the corporate debtor's largest unsecured creditors, and was not appointed to the Committee.

The corporate debtor brought suit on October 1, 1982, against I & L, seeking: (1) the release of assets allegedly wrongfully retained by I & L, rental payments for the period the assets were held, and punitive damages; and (2) the payment of a $90,-000.00 claim based on two construction contracts. Several months later, I & L filed a proof of claim in the amount of $102,119.46. If this claim were allowed, I & L would be one of the largest unsecured creditors of the corporate debtor. I & L applied for appointment to the committee and for the appointment of a trustee. A hearing was held on both applications.

Section 1102(c) permits a party in interest to request the court to change the

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

composition of a creditors' committee "if the membership of such committee is not representative of the different kinds of claims with interests to be represented." The party in interest must demonstrate to the court that the committee is not representative. *In Re Hadar Leasing International Co., Inc.,* 11 B.R. 460 (Bkrtcy.S.D.N.Y.1981). At the hearing I & L failed to present evidence that the committee was unrepresentative. Thus, it did not meet its burden of proving that the composition of the committee should be altered.

■ The Code allows the court to appoint a trustee when the debtor engages in conduct such as fraud, incompetence or gross mismanagement, or when the interests of the creditors or the equity holders warrant it. 11 U.S.C. § 1104(a). An applicant seeking this relief must overcome "a strong presumption that a debtor [should] remain[] in possession" in order for the court to use such an "extraordinary remedy." *In Re F.A. Potts & Co., Inc.,* 20 B.R. 3, at 4 and 7 (Bkrtcy.E.D.Pa.1981); *In Re Hotel Associates,* 3 B.R. 343, 345 (Bkrtcy.E.D.Pa.1980).

■ I & L's application alleges that the following facts justify appointing a trustee: During the six-month period ending in December, 1982, the corporate debtor received its only income from the sale of scrap metal which were outside the debtor's ordinary course of business. The debtor has abandoned his business as an excavation contractor, and has liquidated its assets without court approval, both of which are tantamount to fraud. Furthermore, the corporate debtor has mismanaged its assets, failed to file a plan of reorganization and has no reasonable prospects of a successful reorganization.

In addressing these allegations, we note that the sales of scrap metal effectively meshed with a safety mandate issued by the debtor's insurer which required the removal of the scrap metal from the debtor's workplace. The revenue generated by the sales were maximized through the debtor's efforts to cut the large pieces of scrap into a more manageable and moveable size. The corporate debtor used the money it received through the sales to recover, repair and insure certain equipment. These activities reduced the indebtedness of the corporate debtor and were conducted with the cooperation of two secured creditors under the aegis of the court. None of the evidence educed at the hearing supports the allegation that the corporate debtor abandoned its business or engaged in fraud or deception.

I & L's allegation of mismanagement is based on transactions between the corporate debtor and the individual debtor which the debtor's business records fail to reflect fully. In his coal mining business, the individual debtor used the equipment which was recovered by the corporate debtor after repossession by a secured creditor. No formal lease was executed and the corporate debtor's books indicate no rental payments. However, the activity itself, as distinguished from the record-keeping, was proper. Proper procedure would have been for the individual debtor to send checks to the corporate debtor, which would in turn send them to the security holder of that equipment. Instead, the individual debtor sent the proper remittance directly to the creditor. This deviation, which has since been remedied, is explained by the corporate debtor's lack of access to professional accounting services (N.T. 49). Similarly, the corporate debtor's failure to submit financial statements on a monthly basis has been rectified by its acquisition of professional accounting services.

We find that the facts of this case do not warrant the appointment of a trustee and thus we will deny such requested relief.