# United States Court of Appeals

## For the First Circuit

No. 08-2244

MARK LESSARD and LINDA LESSARD,

Plaintiffs, Appellants,

v.

WILTON-LYNDEBOROUGH COOPERATIVE SCHOOL DISTRICT,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,

Boudin, Circuit Judge,

and Saylor,[*] District Judge.

Richard L. O'Meara with whom Nicole L. Bradick and Murray, Plumb & Murray were on brief for appellants.
Eric R. Herlan with whom Peter C. Felmly and Drummond Woodsum & MacMahon were on brief for appellee.

January 20, 2010

---

[*]Of the District of Massachusetts, sitting by designation.

**Per Curiam**. Stephanie Lessard, a New Hampshire resident with multiple disabilities, is entitled to receive a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, 1412(a)(1), (5), et seq. (2004).[1] She is speech-language impaired, mentally retarded, and orthopedically impaired according to New Hampshire special education regulations. She has received special education services since the age of three and had reached the age of nineteen at the time of the dispute that resulted in this appeal.

In 2001, Stephanie began attending the Crotched Mountain Rehabilitation Center ("CMRC"), a New Hampshire facility providing special education services to the Wilton-Lyndeborough Cooperative School District. Although CMRC includes residential facilities, Stephanie attended as a day student and commuted by bus. Her parents came to disfavor Stephanie's placement, believing that she had failed to display adequate academic development and that her placement at CMRC was the cause of extreme and aggressive

---

[1]Under 20 U.S.C. § 1401(8), a free appropriate public education is defined as:

> [S]pecial education and related services that-- (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . . education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

-2-

behavioral problems that she exhibited while at CMRC and while traveling there.

From April through September 2005, the team managing Stephanie's case met six times and developed a seventy-seven-page individualized education program ("IEP") addressing Stephanie's panoply of needs for the 2005-06 school year. The Lessards were unhappy with aspects of the proposed plan; the team agreed to some modifications but not others. The parents also opposed Stephanie's continued placement at CMRC or an alternative special day school offered by the team, and requested instead a home- and community-based program in which an outside vendor would work closely with Stephanie to help acclimate her to basic life skills and means of community interaction.

No agreement was reached, and the Lessards refused to consent to the 2005-06 IEP. The 2004-05 IEP therefore remained in effect pursuant to IDEA's "stay put" provision, 20 U.S.C. § 1415(j),[2] and the Lessards ultimately withdrew Stephanie from CMRC in late December 2005. The school district filed a request for a due process hearing, see 20 U.S.C. § 1415(f), to determine the suitability of the proposed IEP; a two-day hearing involving multiple witnesses and several thousand pages of documentary

---

[2]The 2004-05 IEP, which the Lessards also challenged, was upheld by this court. Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 518 F.3d 18 (1st Cir. 2008). Many although not all of the arguments made in this appeal are similar to those made in the earlier one.

evidence was held on March 13 and March 31, 2006. In July 2006, the hearing officer upheld the school district's proposed 2005-06 plan and placements.

The Lessards then brought the present action for review of the hearing officer's decision, seeking an award of compensatory educational services for Stephanie. 20 U.S.C. § 1415(i)(2)(A). The district court upheld the hearing officer's ruling, Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., No. 06-cv-423, 2008 WL 3843913, at *10 (D.N.H. Aug. 14, 2008), and the Lessards now appeal to this court. The framework for review of the district court decision is conventional: clear error with respect to factual findings and de novo for the legal findings. C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 284 (1st Cir. 2008).

The ultimate issue is whether the plan conforms to requirements. In both the district court and this one, as is common when both are reviewing an agency decision, the underlying judgment of those framing the plan is given considerable weight. See Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991). The standard of review is thus deferential to the educational authorities, who have "primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs." Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982).

The child's educational program and placement must be outlined in an IEP, and the IEP must be tailored to the child; but the details depend on the situation of the child. Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 20 (1st Cir. 2003). And while an IEP must be "reasonably calculated" to deliver "educational benefits," Rowley, 458 U.S. at 207, an ideal or perfect plan is not required. Lessard, 518 F.3d at 23-24; see also C.G. ex rel. A.S., 513 F.3d at 284; Mr. R., 321 F.3d at 11; G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 948 (1st Cir. 1991) (IDEA-provided education need not be "the only appropriate choice, or the choice of certain selected experts, or the child's parents' first choice, or even the best choice").

The hearing officer concluded that "[Stephanie] has received educational benefits from all of the programs provided in the 2004-2005 IEP" and that "[i]t is reasonable to assume that this progress would continue in some fashion through the implementation of an enhanced 2005-2006 IEP." These conclusions were supported by testimony from a number of therapists and coordinators who worked with Stephanie at CMRC. On appeal, the Lessards argue (1) that the IEP was inadequate because it failed to provide appropriate literacy and transitional services, and (2) that the placement at CMRC was overly restrictive and otherwise harmful.

The first argument stems in part from the Lessards' request that the IEP incorporate a literacy program called the

-5-

Lindamood Phoneme Sequencing Program, otherwise known as "LiPS," and provide an instructor already experienced with the method. The LiPS program was recommended by Dr. Robert Kemper, who performed a psycholinguistic evaluation of Stephanie at the Lessards' request. When the school district redrafted the IEP to include this approach but provided only a speech pathologist newly trained in the method, the Lessards switched positions, favoring the "Davis" approach because (they say) the school district's proposed LiPS instructor lacked the hands-on LiPS experience recommended by Dr. Kemper.

The district court sustained the hearing officer's findings that "the Lessards' additional experience requirement was not sufficient to invalidate the LiPS program offered in the IEP," "that the Lessards had not shown that the multisensory program then being used at CMRC was inappropriate," and "that [Stephanie] was receiving educational benefits from the CMRC reading program." Lessard, 2008 WL 3843913, at *6. These findings are adequately supported: the record contains testimony from Stephanie's teachers indicating that she was progressing at a level commensurate with her cognitive profile.

Perhaps Stephanie might have benefitted even more if Dr. Kemper's recommendations had been followed in full--the thrust of some of the Lessards' evidence--but that is not the test:  what is "appropriate" depends on expert judgment, available options and indications of progress.  The hearing officer found that the school

district attempted in good faith to accommodate the Lessards' instructional requests, and the proposed 2005-06 IEP was quite different from its earlier incarnations under which Stephanie may have failed to progress adequately. That the 2004-05 IEP may have been unsuccessful in this respect does not mean that it was itself ex ante an unreasonable choice. See Lessard, 518 F.3d at 23-24; see also Lachman v. Ill. State Bd. of Educ., 852 F.2d 290, 297 (7th Cir. 1988), cert. denied, 488 U.S. 925 (1988).

The Lessards' challenge to the IEP's transitional services is that the IEP failed to offer Stephanie sufficient interaction with her community. A similar argument, however, was rejected in the Lessards' challenge to Stephanie's 2004-05 IEP, Lessard, 518 F.3d at 29-30, and the proposed 2005-06 IEP "included 'a significant increase in services in the area of pre-vocational skills,'" Lessard, 2008 WL 3843913, at *7 (quoting the hearing officer)--for example, it increased the number of minutes per week of pre-vocational classroom instruction and added course instruction in horticulture and home economics.

The Lessards' second basic objection to the proposed 2005-06 IEP is that it failed to place Stephanie in the least restrictive environment in which she could receive educational benefits, as is required. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.115 (2009); see also Kathleen H. v. Mass. Dep't of Educ., 154 F.3d 8, 11 (1st Cir. 1998). New Hampshire regulations provide a

table of potential placement categories; regular classroom instruction is the least restrictive option under this table while instruction at a hospital or institution is the most restrictive. N.H. Code. Admin. R. Ann. Ed. 1115.04 tbl.1100.2 (2002).

The table classes full-time or part-time placement at a special day school as less restrictive than home instruction. Id. The Lessards argue that the CMRC is more akin to a hospital or institutional placement, as many students who attended CMRC were more severely disabled than Stephanie and resided permanently at the facility. The CMRC does have residential facilities, but it also runs an approved, licensed special day school, and Stephanie attended that day school and returned home each evening to spend time with her family and in her community.

The Lessards also say that their own proposal should not be seen as strictly "home instruction" under New Hampshire's regime because it would have included significant community-based interaction and thus would have been less restrictive than placement at CMRC. New Hampshire regulations describe home instruction as "receiv[ing] all or a portion of [the student's] special education program at home," N.H. Code. Admin. R. Ann. Ed. 1115.04 tbl.1100.2 (emphasis added), and we cannot say that the district court erred in thus categorizing the Lessards' proposal.

Pointing to Stephanie's behavioral outbursts while at and being transported to CMRC, the Lessards finally contend that

-8-

Stephanie's placement at CMRC was emotionally damaging to her. Cf. Colin K. v. Schmidt, 536 F. Supp. 1375, 1387 (D.R.I. 1982) (placement is inappropriate if it results in emotional harm to the child), aff'd, 715 F.2d 1 (1st Cir. 1983). The district court permissibly found that the Lessards had not shown CMRC to be the cause of this behavior and that Stephanie's behavior was improving. Stephanie did continue to exhibit some behavioral problems, but these seemed to decrease in frequency over time, and the IEP included a number of measures addressing such problems.

Parents understandably want the very best for their children, whether disabled or not, and the Lessards' vigorous advocacy is in this respect commendable. Nevertheless, given the deferential standard that prevails, our review confirms that Stephanie was afforded a free appropriate public education pursuant to IDEA in the least restrictive environment and so we affirm the judgment of the district court.

It is so ordered.