Pedro LÓPEZ–MUÑOZ, Debtor.

United Surety & Indemnity Company, Appellant,

v.

Pedro López–Muñoz, Appellee.

BAP NO. PR 16–011
Bankruptcy Case No. 13–08171–EAG

United States Bankruptcy Appellate Panel of the First Circuit.

July 28, 2016

Héctor Saldaña Egozcue, Esq., Carlos Lugo Fiol, Esq., and Jose A. Sánchez Girona, Esq. on brief for Appellant.

Carmen Conde Torres, Esq. and Luisa S. Valle Castro, Esq., on brief for Appellee.

Before Bailey, Finkle, and Fagone, United States Bankruptcy Appellate Panel Judges.

Finkle, U.S. Bankruptcy Appellate Panel Judge.

United Surety & Indemnity Company ("USIC") appeals from the bankruptcy court's January 15, 2016 order denying its motion to appoint a chapter 11 trustee under § 1104.[1] For the reasons set forth below, we **AFFIRM** the ruling of the bankruptcy court.

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

## BACKGROUND

### I. Pre–Bankruptcy Events

Over 30 years ago, Pedro López–Muñoz (the "Debtor") and his now ex-spouse incorporated Western Petroleum Enterprises Inc. ("Western Petroleum"), to engage in the sale and distribution of petroleum products and derivatives. The Debtor owns 50% of the shares of this corporation. Western Petroleum obtained surety bonds from USIC to guarantee its obligations to its creditors. As a condition of issuing the bonds, Western Petroleum executed an indemnity agreement which the Debtor signed both as "principal and indemnitor." USIC's proof of claim filed in the Debtor's bankruptcy case arises out of this indemnity.

In 1999, the Debtor incorporated Hi Speed Gas Corp. ("Hi Speed"), of which he is the sole shareholder. Hi Speed owns a gas station located in Hormigueros, Puerto Rico ("Hi Speed Station"). In 2001, the Debtor acquired, in his personal capacity, a gas station located in Balboa Ward, Mayagüez ("Debtor's Station").

Apparently, hard times befell Western Petroleum and in 2013 it was not able to pay its debts and ceased operations. The Debtor and his ex-spouse had also provided personal guarantees in excess of $10 million to most of Western Petroleum's creditors, and one such creditor commenced aggressive collection actions in the courts of Puerto Rico against Western Petroleum and the Debtor.

On April 1, 2013, the trust denominated La Familia Trust ("Familia Trust" or "trust") was created by one of the Debtor's sons. We highlight here those provisions of the trust pertinent to this matter and USIC's motion. The "Constitution of Trust" recites its purpose is to "maintain adequate living standards" for the Debtor and his children. It names the Debtor as its beneficiary and his children as substitute beneficiaries upon the Debtor's death. The trustee is the Debtor's current spouse. The Debtor has the power to designate any successor trustee at any time. He has the exclusive right of use of all trust properties. Lastly, the trustee is required to follow any instructions from the Debtor regarding distributions of trust income and assets, and no person other than the Debtor can obligate the trustee to make distributions from the trust.

On April 8, 2013, Hi Speed executed a 20–year lease with Puma Energy Caribe LLC ("Puma") for the operation of the Hi Speed Station. The lease provided for an initial monthly rental payment to Hi Speed of $32,000 and an advance payment of $125,000 to Hi Speed. The advance payment was to be repaid to Puma through monthly rent reductions of $500 during the lease term. On the same day, the Debtor executed a 20–year term lease with Puma for the operation of the Debtor's Station, with an initial monthly rental payment to the Debtor of $18,000 and the same advance payment of $125,000. Similarly, the advance payment was to be repaid to Puma through a $500 monthly rent reduction during the lease term. Under both lease agreements, Puma assumed all costs related to the operation of the gas stations, including utilities and insurance. The leases are triple net leases whereby Puma is responsible for the repair and maintenance of the gas stations, for obtaining all licenses necessary for their operation, and for the payment of real and personal property taxes. In short, the rents received by Hi Speed and the Debtor under these leases are free and clear of any expenses relating to the day-to-day operations of the gas stations and the maintenance of the land and buildings on which the stations are located.

On April 11, 2013, the Debtor sold his interest in the Debtor's Station to Hi Speed. According to the terms of the sale, Hi Speed paid $5,000 to the Debtor and assumed the mortgage obligation against the Debtor's Station owed to Banco Popular de Puerto Rico ("BPPR"). Hi Speed also agreed to pay the Debtor a monthly salary of $5,000 and monthly rent of $10,000 for office space it used in another building owned by the Debtor personally. On the same date, the Debtor donated his shares in Hi Speed to the Familia Trust.

Adding to the Debtor's personal financial woes, on May 17, 2013, BPPR garnished slightly more than $182,000 from the Debtor's personal bank account which, at the time, included the $125,000 advance payment under the lease of the Debtor's Station.

## II. Bankruptcy Proceedings

On October 1, 2013, the Debtor filed a chapter 11 petition, schedules, and a statement of financial affairs. On his schedules the Debtor listed his 50% interest in Western Petroleum valued at zero and his 50% interest in another corporation valued at $500,000. He did not list any interests in any trusts. In his statement of financial affairs he disclosed the pre-petition transfers of the Debtor's Station to Hi Speed and his Hi Speed shares to the Familia Trust, but indicated that the transfers took place in March 2013, rather than April 2013. He disclosed the $5,000 payment he received for the transfer of the Debtor's Station and indicated he received "no value" for the transfer of the Hi Speed shares. He did not mention the lease agreements with Puma for the operation of the two gas stations.

The U.S. Trustee conducted a § 341 meeting of creditors ("Creditors' Meeting") which USIC attended. At that meeting the U.S. Trustee questioned the Debt-or about his pre-petition transfers to Hi Speed and the Familia Trust, and he answered those questions. In response to a question about the trust the Debtor stated that his children were the beneficiaries. As to his shares in Hi Speed, he valued them as "worthless," explaining that he transferred them to the trust "[t]o protect [his] sons."

Subsequently, in April 2014, the Debtor filed his first disclosure statement and plan of reorganization. In the disclosure statement, he referenced the transfer of his interest in Hi Speed to the Familia Trust on April 1, 2013, and the sale of the Debtor's Station to Hi Speed on April 11, 2013. The purpose of these transactions, he stated, was "to preserve the property due to Debtor's difficulties to maintain the mortgage payments up to date . . . ." This initial disclosure statement did not discuss the Puma leases. Later that month, USIC conducted a deposition of the Debtor. USIC asserts it was not until it confronted the Debtor at the deposition with evidence it had gathered as a result of its own investigation, that the Debtor acknowledged the existence of the Puma leases as well as being the sole beneficiary of the Familia Trust.

After some delays in the proceedings, USIC filed an objection to the disclosure statement and also requested the appointment of a chapter 11 trustee pursuant to § 1104(a)(1) and (2). Among other things, USIC maintained that there was cause to appoint a trustee, citing to the Debtor's pre-petition transfers of his assets to related parties in order to defraud his creditors and the Debtor's alleged failure to make "crucial" disclosures about such transfers, such as the Puma leases and his sole interest in the trust. In fact, USIC asserted, the Debtor gave inaccurate dates for such transfers to mislead his creditors. USIC also maintained that the Debtor had a

conflict of interest because the estate has a cause of action against Hi Speed under § 548 for the avoidance and recovery of funds it received by virtue of the fraudulent transfers. It argued that the following transactions occurring within the six month period before the petition date were fraudulent: (1) the transfer of the Debtor's Station to his solely owned corporation Hi Speed, (2) the "donation" of his shares in Hi Speed to the Familia Trust, of which he was the sole beneficiary, (3) the execution of the two operating lease agreements with Puma, and (4) the payment by Hi Speed to the Debtor of a monthly salary of $5,000 and monthly rent of $10,000.

Weighing in on the matter, the U.S. Trustee filed his Position as to Motion to Appoint a Chapter 11 Trustee, in which he stated that the facts submitted by USIC in its motion warranted the appointment of a trustee under § 1104(a)(1) and (2), or alternatively, conversion of the case to chapter 7. The U.S. Trustee, however, did not join in the motion for appointment of a chapter 11 trustee or file a motion to convert the case to chapter 7.

To respond to these challenges to his reorganization efforts, the Debtor executed a deed of rescission on August 29, 2014, transferring the Debtor's Station from Hi Speed back to himself. The shares in Hi Speed were also transferred from the Familia Trust back to the Debtor. On that same date, the Debtor filed a motion seeking to amend his schedules and statement of financial affairs to reflect such rescissions and include these assets in his bankruptcy estate, and to include the Puma lease and associated income it generates along with the expenses associated with the administration of the lease. He also filed an amended disclosure statement and an amended plan to, among other things, correspond with the return of those assets to the Debtor and reflect the lease income

and lease administration expenses. In the amended disclosure statement and amended Schedule B (personal property), the Debtor ascribed no value to the Hi Speed shares and the Puma lease and attached audited financial statements for Hi Speed as of June 30, 2013, indicating a negative book value of $452,000, and for the Debtor's Station as of December 31, 2012, indicating a negative book value of $923,000.

Additionally, the Debtor filed an opposition to USIC's request for the appointment of a chapter 11 trustee. His primary contention was that cause did not exist for such appointment because: (1) he fully disclosed the transfers of his assets from the outset of his case, (2) the transfers were made for the benefit of all creditors in order to protect the income derived from the Puma leases from the aggressive collection efforts of just one creditor, an entirely valid reason for such transfers, and (3) he never intended to defraud or deceive his creditors. He disclosed that "out of an abundance of caution and to avoid any additional allegations of bad faith or wrongdoing by USIC," he had rescinded these transfers. The Debtor further maintained that appointment of a trustee was not in the best interest of creditors as it would greatly increase administrative expenses and only delay his reorganization to the detriment of his creditors.

USIC filed a reply to the Debtor's opposition, citing *Martin v. Bajgar*, 104 F.3d 495 (1st Cir.1997), for the proposition that the Debtor's re-transfer of fraudulently transferred assets after the petition date did not cure the fraudulent transfers. It further argued that the Debtor's failure to collect from Hi Speed the monies it received from the Puma lease of the Debtor's Station prior to the rescission of the transfer constituted "gross mismanagement." Finally, it reiterated that the appointment

of a trustee was in the best interests of creditors because a trustee would likely sell both gas stations and pursue the turn-over of monies paid to Hi Speed under the Puma lease. For these reasons, it posited, the benefits to the estate of having a trustee appointed outweighed any detriment alleged by the Debtor.

On July 14 and 15, 2015, the bankruptcy court held an evidentiary hearing on USIC's request for appointment of a chapter 11 trustee and the Debtor's amended disclosure statement.[2] As USIC bore the burden to establish that grounds existed under § 1104(a)(1) and (2) for the appointment of a trustee, it is significant to note that because it had failed to list its expert witness, certified public accountant Rafael Pérez Villarini ("CPA Villarini"), on the parties' joint pre-trial report, USIC was limited to presenting this expert witness for rebuttal purposes only.[3] In the end this proved to be a hurdle that USIC did not adequately overcome. In defending against the appointment of a trustee, the Debtor testified, as did his accountant Doris Barroso ("CPA Barroso") who appeared as an expert witness, both as a certified public accountant and a certified forensic accountant. The parties also submitted numerous exhibits and post-trial memoranda.

## III. The Bankruptcy Court's Opinion and Order

On January 15, 2016, the bankruptcy court entered an Opinion and Order (the "Order") denying USIC's request for the appointment of a chapter 11 trustee. *See*

*In re López Muñoz*, 544 B.R. 266 (Bankr. D.P.R.2016).

### A. Findings of Fact

In the Order, the bankruptcy court issued detailed findings of fact regarding the Debtor's transfers of assets and USIC's allegations of the Debtor's pre-petition fraudulent transactions and post-petition fraud. The bankruptcy court based its factual findings on the joint pre-trial report filed by the parties, the testimony of the witnesses at the evidentiary hearing, and the exhibits entered into evidence at that hearing. Each of the bankruptcy court's factual findings is supported by a reference to either the hearing transcripts, the joint exhibits, or the joint pre-trial report. Many of the undisputed factual findings regarding the Debtor's pre-petition transactions and post-petition disclosures are set forth in the background section above. Other findings of the bankruptcy court recited in the Order that are relevant to this appeal are summarized below.

#### 1. Facts related to pre-petition allegations of fraud

In connection with the general agreement of indemnity, USIC was provided information about the Debtor's financial condition, including a 2010 financial statement ("Initial 2010 Financial Statement"). The financial statement listed the purchase price paid by Hi Speed for its gas station as approximately $2,200,000, the value of the Debtor's shares in Hi Speed at $3,000,000 based on a 2002 appraisal, and

**2.** Due to prolonged discovery disputes between the parties and multiple continuances, the evidentiary hearing did not take place until almost a year after USIC filed its request for a chapter 11 trustee.

**3.** USIC intended to present CPA Villarini as an expert witness in its case in chief, but at a

prior hearing the bankruptcy court ordered that USIC was precluded from presenting this expert witness in its case in chief because of such omission. Thus, at the evidentiary hearing, CPA Villarini could only testify as a rebuttal witness.

the value of the Debtor's Station at $1,400,000, also based on a 2002 appraisal. The bankruptcy court afforded "little or no weight" to these values because the Initial 2010 Financial Statement was not prepared by a certified public accountant and was not even a compilation, the lowest level of financial statement a certified public accountant can provide for a client. Further, the bankruptcy court specifically found that the value of assets in 2002 was not necessarily representative of their value eight years later in 2010, and even less so in 2013 when the transfers occurred.

The 2013 financial statement of Hi Speed disclosed the existence of the Puma leases and the two advance lease payments of $125,000, and reflected a book value for Hi Speed of negative $452,000. The 2012 financial statement for the Debtor's Station reflected a book value of negative $923,000.

## 2. Facts related to post-petition allegations of fraud

After his bankruptcy filing, the Debtor received from Hi Speed a monthly salary of $5,000 and rent of $10,000 for office space leased by Hi Speed from the Debtor. Hi Speed paid its own operating expenses for the administration of the lease of the Hi Speed Station to Puma. After the reversal of the asset transfers on August 29, 2014, the monthly rent Hi Speed paid the Debtor was reduced to $5,000 to take into account that it was thereafter administering only one of the Puma leases.

As to disclosures about his assets, the Debtor had listed the pre-petition transfers to Hi Speed and the Familia Trust in the statement of financial affairs, but reflected the transfers as taking place in March, 2013 rather than the actual transfer date of April 11, 2013, shortly after the execution of the Puma leases. At the evidentiary hearing, the Debtor explained he had made an "honest mistake" about the date. At his deposition taken by USIC in April, 2014, he produced all requested documents "except a document sustaining the transfer of shares to the Trust."

During the Creditors' Meeting, at which USIC's attorney was present, the Debtor answered numerous questions of the U.S. Trustee about the pre-petition transfers. He incorrectly stated that his four adult children were the beneficiaries of the Familia Trust. At the evidentiary hearing, however, he agreed that he was the sole beneficiary of the trust and explained that he misspoke for two reasons. First he was answering the question from memory and did not have the trust document before him. Second, he thought of his children as the true trust beneficiaries because the "law of life" dictates that he will pass away before his children do and they will inherit all of the trust assets. As to the value of the Hi Speed shares transferred to the trust, at the Creditors' Meeting he explained the shares were worthless and that the reason he transferred them was to protect his children. This statement of value was consistent with the valuation listed on the statement of financial affairs. At the evidentiary hearing, the Debtor testified that he relied on an amended financial statement for the year 2010 (dated July 31, 2013) in order to provide the value of the shares of Hi Speed in the statement of financial affairs and at the Creditors' Meeting.

The disclosure of expenses by the Debtor on Schedule J included the Debtor's own expenses incurred for the administration of the Puma lease for the Debtor's Station, not those for the actual operation of the gas station assumed by Puma under the lease. On a monthly basis, the Debtor charges Hi Speed for the cost of administering its lease, and for its use of electricity, water, and telephone for 1,000 square feet of office space the Debtor rents to Hi

Speed in the office building he owns. The Debtor also collects from Hi Speed property taxes (CRIM), "patentes" (licenses), and the costs of repair and maintenance for this space, and charges Hi Speed for services provided by an accountant who also works for the Debtor and another of his corporations.

Regarding the allegations of diversion of funds, after the August 29, 2014 rescission of the asset transfers, the Debtor himself commenced making all mortgage payments to BPPR and paid the operating expenses of administering the lease which were previously paid by Hi Speed. Hi Speed did not refund any money it received under the Puma lease, but there were no surplus funds owed by Hi Speed to the estate for the pre-rescission period. All such funds Hi Speed received were used to pay the BPPR mortgage on the Debtor's Station, the costs of administering the Puma lease, the office rent, and the Debtor's salary. CPA Barroso found no indicia of fraud based on her conclusion that the Debtor did not divert any funds, did not conceal assets or omit information from his creditors, and did not falsify any documents. She did not prepare a fraud analysis of the Debtor's financial transactions or operations because it was unnecessary as she found no indicia of fraud. Finally, she determined there was no material effect on the bankruptcy estate from the asset transfers because all funds were received by the estate and paid to the Debtor's secured creditors. USIC's witness CPA Villarini was unable to rebut CPA Barroso's conclusion that no monetary loss was sustained by the estate as a result of the asset transfers.

## B. The Bankruptcy Court's Ruling

After issuing its findings of fact, the bankruptcy court ruled that:

Article 1249 of the Puerto Rico Civil Code creates a presumption that the asset transfer was done in fraud of creditors. P.R. Laws Ann. tit. 31, § 3498. But, the debtor rebutted that presumption at the evidentiary hearing with the testimony of CPA Barroso that the transfer of assets had "no material effect" upon the estate. CPA Barroso was a credible and convincing witness and was qualified to testify as an expert in accounting and, in particular, as a certified financial forensic accountant. Her duties in this case included the review of the monthly operating reports, assistance in the preparation of the payment plan, reconciliation of claims submitted to the court with the accounting records, preparation of the liquidation analysis, assistance in the preparation of the financial projections, and analysis of information regarding the cash inflows and outflows of the debtor and Hi Speed. The Court also took into account its observations over many years in other cases in which CPA Barroso has been employed as a bankruptcy professional in according considerable weight to her testimony. And, when USIC called CPA Pérez Villarini as an expert witness to rebut CPA Barroso's testimony and asked him whether he agreed with her statement that there was no "monetary loss to the estate as a result of both the transfers that Mr. Lopez performed in regarding the shares of Hi Speed and la familia trust," CPA Pérez Villarini answered "I can't—I can't," and added "I have no basis to—to reach a conclusion in that."

USIC also argues that the debtor's estate has a cause of action for the turnover of $119,500, plus interest, against Hi Speed due to the rescission of the asset transfers. But, CPA Barroso's testimony that the asset transfers had no material effect upon the estate re-

mains in the court's view uncontested. Thus, USIC did not meet its burden of proof that such cause of action exists.

The court is, likewise, not persuaded by the several other grounds raised by USIC. They either were not material to the section 1104 analysis or do not rise to the level of misconduct requiring the appointment of a chapter 11 trustee. And, in many instances, the debtor was able to provide an acceptable explanation for his actions. For example, the debtor was able to show that he relied on an amended financial statement for the year 2010 when he indicated that the Hi Speed shares had no value.

544 B.R. at 276–77 (citations to the hearing transcript omitted). Having concluded that "USIC did not meet its burden of proof," the bankruptcy court denied its request for appointment of a chapter 11 trustee. *Id.* at 277.

## IV. Subsequent Events

After determining that USIC had failed to timely file an objection to the Debtor's amended disclosure statement, the bankruptcy court entered an order approving it and scheduling a confirmation hearing on the Debtor's amended plan of reorganization for April 20, 2016. In response USIC filed a motion with the bankruptcy court seeking to stay the bankruptcy court proceedings pending the resolution of this appeal. That motion was denied and USIC filed an emergency motion with the Panel seeking to suspend the proceedings in the bankruptcy court, including the scheduled confirmation hearing, pending the resolution of this appeal. On April 15, 2016, the Panel entered an order granting the stay motion in part, concluding that a suspension of the confirmation proceedings was warranted but not suspension of all proceedings in the bankruptcy case.

## *JURISDICTION*

■ The Panel has jurisdiction to hear appeals from final judgments, orders and decrees of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). A bankruptcy court's order denying the appointment of a chapter 11 trustee is a final, appealable order. *See Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 241 (4th Cir.1987) (determining that an order denying creditors' committee's request for appointment of a chapter 11 trustee was "immediately reviewable as a final decision"); *see also Anderson v. Real Estate Partners, Inc. (In re Real Estate Partners, Inc.)*, No. 07–1440 ODW, 2009 WL 3246619, at *1 (C.D.Cal. Oct. 5, 2009) ("Pursuant to 28 U.S.C. § 158(a), the [court] may review any final judgment, order, or decree of a bankruptcy court, including an order denying the appointment of a Chapter 11 trustee."); *Official Comm. of Asbestos Claimants v. G–I Holdings, Inc. (In re G–I Holdings, Inc.)*, 295 B.R. 502, 504 (D.N.J.2003), *aff'd*, 385 F.3d 313 (3d Cir.2004) (holding that order denying appointment of a bankruptcy trustee is a final order and, therefore, the court had jurisdiction under 28 U.S.C. § 158(a)). Accordingly, the Panel has jurisdiction to hear this appeal.

## *STANDARD OF REVIEW*

■ The Panel reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). Thus, the bankruptcy court's factual findings regarding the appointment of a trustee are reviewed under a clearly erroneous standard. *See Tradex Corp. v. Morse*, 339 B.R. 823, 832 (D.Mass.2006). The bankruptcy court has discretion, however, in determining whether the evidence is sufficient to establish "cause" for the appointment of a trustee or such appointment is in

the interests of creditors and the estate under § 1104(a). *See id.* "A discretionary decision of the bankruptcy court is overturned only when there has been abuse of that discretion." *Id.* at 824 (citation omitted). "'Apart from an error of law, an abuse of discretion occurs when the ... court considers improper criteria, ignores criteria that deserve significant weight, or gauges only the appropriate criteria but makes a clear error of judgment in assaying them.'" *Wiscovitch–Rentas v. Villa Blanca VB Plaza LLC (In re PMC Mktg. Corp.),* 543 B.R. 345, 354–55 (1st Cir. BAP 2016) (quoting *Rosario–Urdaz v. Rivera–Hernandez,* 350 F.3d 219, 221 (1st Cir. 2003) (citation omitted)).

## DISCUSSION

### I. The Statutory Basis for Appointment of a Chapter 11 Trustee

Section 1104(a) provides, in relevant part, as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee–

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ...; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate....

■ 11 U.S.C. § 1104(a). "[T]he two different bases for appointing a trustee are disjunctive; a court must find *either* fraud, incompetence and the like or that such appointment is in the interests of the cred-

itors and estate." *Petit v. New Eng. Mortg. Servs., Inc.,* 182 B.R. 64, 69 (D.Me. 1995) (citation omitted).

■ "The appointment of a chapter 11 trustee is considered to be an 'extraordinary' act since, in the usual case, the debtor remains a debtor-in-possession throughout reorganization." *Id.* at 68 (citation omitted). "The presumption in chapter 11 cases is that 'current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate.'" *Id.* (citation omitted). "Nevertheless, in the appropriate case, the appointment of a trustee is a power which is critical for the court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Nartron Corp.,* 330 B.R. 573, 591–92 (Bankr. W.D.Mich.2005); *see also Tradex Corp.,* 339 B.R. at 823.

■ The moving party has the burden of proving grounds that justify the appointment of a chapter 11 trustee and, in doing so, must overcome a strong presumption that the debtor is to remain in possession. *In re LHC, LLC,* 497 B.R. 281, 291 (Bankr.N.D.Ill.2013). The First Circuit has not determined the appropriate burden of proof for the appointment of a trustee pursuant to § 1104, and courts are split as to the applicable standard. Some courts have held that a movant must establish cause by clear and convincing evidence. *See, e.g.,* 7 *Collier on Bankruptcy,* at ¶ 1104.02[4(b)]; *Adams v. Marwil (In re Bayou Group, LLC),* 564 F.3d 541, 546 (2d Cir.2009); *In re G–I Holdings, Inc.,* 385 F.3d at 317–18 (explaining that heavy "presumption" against appointment of a trustee refers to a heavy burden of persuasion by clear and convincing evidence that the party moving for appointment must bear). Others hold that a preponderance

of the evidence standard is more appropriate. *See Tradex Corp.*, 339 B.R. at 832; *In re Costa Bonita Beach Resort*, 479 B.R. 14, 44 (Bankr.D.P.R.2012).

Here, although the bankruptcy court stated it "agree[d] with the majority view that a debtor's presumptive right to maintain possession over the reorganizing business is an important interest justifying the heightened burden of clear and convincing evidence," it concluded "the debate [wa]s immaterial" in this case because the appointment of a trustee was not warranted "under either standard." *In re López Muñoz*, 544 B.R. at 275. USIC urges us to adopt a preponderance of the evidence standard, but we need not adopt a particular standard for our review as we find no abuse of discretion in the court's ruling that USIC failed to meet its burden under any applicable burden of proof standard.

## II. Applying the Standard

### A. Cause Under § 1104(a)(1)

Section 1104(a)(1) does not define cause. Instead, it references a non-exhaustive list of grounds that may each establish cause to appoint a trustee: fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management. The inquiry into whether cause exists for the appointment of a chapter 11 trustee is not limited to the enumerated list but extends to "similar cause." *See* 11 U.S.C. § 1104(a)(1). In determining whether a particular set of circumstances establishes cause under this prong of § 1104(a), courts have considered a variety of factors, including:

(1) Materiality of the misconduct;

(2) Evenhandedness or lack of such in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;

(3) The existence of pre-petition voidable preferences or fraudulent transfers;

(4) Unwillingness or inability of management to pursue estate causes of action;

(5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties owed to the debtor; [and]

(6) Self-dealings by management or waste or squandering of corporate assets.

*In re Sundale, Ltd.*, 400 B.R. 890, 900 (Bankr.S.D.Fla.2009) (quoting *In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr.S.D.Ga. 2000)); *see also In re Veblen West Dairy LLP*, 434 B.R. 550, 553 (Bankr.D.S.D.2010) (considering similar factors for a § 1104(a)(1) analysis); *In re Nartron Corp.*, 330 B.R. at 592 (same).

▮▮▮▮ In considering these factors, "the level of the acts constituting cause, the conduct, failure to act, or gross mismanagement, or the like, must '[rise] to a level sufficient to warrant the appointment of a trustee.'" *In re Sundale, Ltd.*, 400 B.R. at 900 (quoting *Comm. of Dalkon Shield Claimants*, 828 F.2d at 242). While any one factor may not warrant appointment of a trustee, the court must consider "the cumulative or collective impact of the alleged problems or issues in making its decision." *Id.* (citing *In re Cardinal Indus., Inc.*, 109 B.R. 755 (Bankr.S.D.Ohio 1990)). "That is, the court must determine whether the totality of the circumstances warrant appointment of a trustee." *Id.* (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir.1989)). Thus, appointment of a trustee is a fact-intensive determination and must be made on a case-by-case basis. *In re LHC, LLC*, 497 B.R. at 291 (citation omitted). While appointment of a trustee is mandatory if cause is found, a bankruptcy court has wide discretion to determine whether specific conduct suffi-

ciently establishes such cause. *See Spenlinhauer v. Harrington (In re Spenlinhauer)*, No. 15–14223–GAO, 2016 WL 526200, at \*1 (D.Mass. Feb. 9, 2016) (citing *Tradex Corp.*, 339 B.R. at 828–29).

 The crux of USIC's position is that cause for the appointment of a trustee under this prong of § 1104(a) has been demonstrated by the Debtor's pre-petition transfers of assets and repeated post-petition misrepresentations and omissions of material information, all of which evidences a fraudulent scheme designed to prevent the Debtor's creditors from reaching the valuable Puma lease proceeds. It contends these transfers are presumed to be fraudulent, citing to Article 1249 of the Puerto Rico Civil Code, *see* P.R. Laws Ann. tit. 31, § 3498,[4] and that the bankruptcy court's determination that the Debtor rebutted that presumption is clearly erroneous. It also argues that a trustee is warranted because the Debtor's false representations and failure to make crucial disclosures in his schedules, statement of financial affairs, and at the Creditors' Meeting not only underscores his dishonesty but itself constitutes post-petition fraud. We must determine whether the bankruptcy court abused its discretion in concluding there was insufficient evidence to establish cause for the appointment of a trustee.

Section 1104(a)(1) does not define fraud nor is the term defined elsewhere in the Bankruptcy Code. There is a dearth of cases in which courts have found that fraud on the part of the debtor-in-possession justified the appointment of a trustee. *See In re LHC, LLC*, 497 B.R. at 305 (citing *In re F.A. Potts & Co.*, 20 B.R. 3, 5

(Bankr.E.D.Pa.1981)). Some courts have defined fraud under § 1104(a)(1) by reference to state common law fraud. *See id.* (citation omitted); *see also In re Paolino*, 53 B.R. 399, 401–02 (Bankr.E.D.Pa.1985) (citation omitted); *In re F.A. Potts & Co.*, 20 B.R. at 5. In the context of a determination of "actual fraud" under § 523(a)(2)(A), the First Circuit has referenced the common law definition applied to this term. *See Sauer Inc. v. Lawson (In re Lawson)*, 791 F.3d 214 (1st Cir.2015) (holding that "actual fraud" under that provision includes fraud effectuated by means other than by fraudulent misrepresentation). And more recently, the Supreme Court concluded that for purposes of determining the nondischargeability of debt under this Code section, "actual fraud" includes fraudulent transfers. *See Husky Int'l Elecs., Inc. v. Ritz*, —— U.S. ——, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (resolving a case law split and determining that "actual fraud" for purposes of § 523(a)(2)(A) applies to fraudulent conveyance schemes despite the absence of a false representation). As a practical matter, most courts consider the totality of the circumstances to ascertain whether there is sufficient evidence to find that the debtor intended to defraud creditors, and whether the debtor's actions as a whole rise to the level of fraud, dishonesty, or gross mismanagement justifying a trustee's appointment.

In the first instance the bankruptcy court adopted USIC's contention that under P.R. Laws Ann. tit. 31, § 3498, there was a presumption that the Debtor's prepetition transfers of his assets were undertaken to defraud his creditors.[5] But, the

---

4. USIC first referenced this Puerto Rican statute in its post-trial memorandum and relied on it exclusively for the proposition that the pre-petition assets transfers were presumptively fraudulent.

5. This section, entitled "Contracts presumed in fraud of creditors," provides:

 Contracts by virtue of which the debtor alienates property, for [inadequate] consid-

court expressly found that the Debtor had rebutted the presumption, finding credible the testimony of the Debtor in explaining the reasons for the transfers. The court also accepted CPA Barroso's testimony rebutting the allegations asserted by USIC and her expert opinion that the transfers of assets had "no material effect" upon the bankruptcy estate, all funds having been received by the estate and paid to the Debtor's secured creditors. *In re López Muñoz*, 544 B.R. at 276. While the bankruptcy court offered no explanation for its reference to the Puerto Rican contract rescission provision to define "fraud" under § 1104(a)(1), USIC does not challenge its application by the court. Indeed, it is USIC that argued in its post-trial brief that this Puerto Rican statute was controlling and rendered the pre-petition transfers of the Debtor's assets presumptively fraudulent. And the bankruptcy court adopted USIC's argument. Thus there is no reason to reverse the court on this basis.

Still, we are compelled to observe that, to the extent the bankruptcy court relied exclusively on this Puerto Rican statute for its analysis, such reliance would be misplaced. Such a constrained definition of fraud is at odds with the broader scope of § 1104(a)(1), as USIC correctly argued in its motion for the appointment of a trustee and now argues on appeal. Nonetheless, we conclude the court's application of this statute to find the transfers presumptively fraudulent, thereby shifting to the Debtor the burden to rebut the presumption and prove that no fraud had in fact occurred, did not prejudice USIC. To the contrary, the use of such presumption was favorable to USIC in the presentation of its case (at least initially). Where USIC finds fault is in the bankruptcy court's determination that the Debtor rebutted the presumption. Focusing in this appeal on the broader meaning of "fraud" encompassed by § 1104(a)(1), USIC contends that the facts in this case reveal indicia of fraud that establish the Debtor's fraudulent intent, citing *Marrama v. Citizens Bank of Mass.*

eration, are presumed to be executed in fraud of creditors.

Alienations for valuable considerations, made by persons against whom a condemnatory judgment, in any [court], has been previously rendered, or a writ [for] seizure of property has been issued, shall also be presumed fraudulent.

P.R. Laws Ann. tit. 31, § 3498. This section appears under the part of the Puerto Rico Civil Code that addresses Rescission of Contracts, and establishes that contracts executed in fraud of creditors may be rescinded.

The first part of § 3498 addresses transfers for little or no consideration; those based on "duty, moral obligation, affection [or] generosity." *Santiago v. Sepulveda Figueras (In re Sepulveda Figueras)*, 193 B.R. 118, 120 n. 1 (Bankr.D.P.R.1996) (citation omitted) (internal quotations omitted). The second part of § 3498 addresses transfers for consideration. The second part provides that transfers for "valuable consideration" are presumed in fraud of creditors if: (1) a condemnatory judgment has been rendered against the transferor or a writ of attachment has been issued against his property; (2) the transferor sells his property to another who is cognizant of the judgment or of the attachment; and (3) a creditor is prejudiced by the conveyance and has no other legal remedy to obtain reparation for the injury.

The two presumptions established by this section "do not exhaust the possible cases of fraud." *Fed. Deposit Ins. Corp. v. Martinez Almodovar*, 671 F.Supp. 851, 879 (D.P.R. 1987). "The trier of the fact exercising judgment free of the legal presumptions should weigh the most obvious signs of fraud, such as the haste with which the alienation is effected, the insolvency of the debtor, the relations of family, intimacy or confidence with the acquirer, the state of the business affairs of the transferor and judicial claims pending against him." *Id.* (citing *De Jesús v. Carrero*, 112 D.P.R. 631, 636–37 (1982)); *see also Union de Periodistas, Artes Graficas y Ramas Anexas v. Irving Paper Ltd. (In re El Mundo Corp.)*, 208 B.R. 781, 783 (D.P.R.1997).

*(In re Marrama)*, 445 F.3d 518, 522 (1st Cir.2006), and *Cox v. Villani (In re Villani)*, 478 B.R. 51, 60 (1st Cir. BAP 2012) (applying the standard set forth in *Marrama*). We find those arguments unavailing.

In *Marrama*, a case involving a proceeding under § 727 to deny the debtor a discharge, the First Circuit observed that a debtor rarely leaves direct evidence of fraudulent intent and, therefore, intent to defraud a creditor can be proved by circumstantial evidence. *In re Marrama*, 445 F.3d at 522. The First Circuit turned to the Supreme Court's guidance that courts should consider the following "objective indicia" when weighing evidence of fraudulent intent:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.

*Id.* (quoting *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir.2002)).

In the present case, USIC maintains that most of the objective indicia of fraudulent intent set forth in *Marrama* are present. It highlights the following events in support of its position: (1) the Debtor transferred assets he wholly owned to Hi Speed and to the Familia Trust, of which

he was the sole beneficiary, and, thus his (alleged) "scheme" was based on insider relationships between the parties; (2) as the sole beneficiary of the trust, the Debtor had exclusive right to use and control the two gas stations and the lease proceeds; (3) the Debtor received no consideration when he "donated" the Hi Speed shares to the trust; (4) the Debtor admitted he donated his Hi Speed shares to the trust while in financial distress and facing pressure from an aggressive creditor seeking to reach the assets in issue; (5) all of these transactions took place fewer than six months before the Debtor's bankruptcy filing; and (6) the Debtor attempted (allegedly) to keep the valuable Puma leases a secret from his creditors.

Although the bankruptcy court did not specifically discuss the badges of fraudulent intent set forth in *Marrama*,[6] we are satisfied from our review of the record, including the trial transcript, that the bankruptcy court fully considered all the evidence adduced at the two-day hearing and the totality of the circumstances in reaching its factual findings and its legal conclusions. Its decision contains more than fourteen pages of factual findings, each supported by a reference to the hearing transcript, the record, or both. We find no abuse of discretion in the bankruptcy court's determination that USIC failed to refute the Debtor's evidence that he did not intend to defraud his creditors and the estate suffered no loss as a result of the pre-petition transfers. Similarly, we find no reversible error in the bankruptcy court's acceptance of the Debtor's explanations as credible and reasonable, finding that the Debtor did not conceal information and any incorrect information

---

**6.** Nor are we suggesting it needed to specifically address each of these badges of fraud. USIC offers no case law establishing that a bankruptcy court must specifically address each of the indicia of fraud set forth in *Marrama* when determining whether there is sufficient evidence to support a finding of cause under § 1104(a)(1).

provided by the Debtor was unintentional and not done with the intent to deceive or mislead his creditors.

To make such findings, the bankruptcy court took into account the largely unrebutted testimony of CPA Barroso and her expert opinions based on her review of the Debtor's schedules and statement of financial affairs, disclosure statements, financial statements of both the Debtor and Hi Speed, which included the Puma leases, and her analysis of the recent cash flows from the operations of the two gas stations. She testified that the Debtor did not falsify or conceal material financial information and disclosed the pre-petition transactions on the statement of financial affairs, properly omitting them from the bankruptcy asset schedules because he did not own them on the petition filing date. She noted that the Debtor's amended Schedule A (real property) did not list the Puma lease for the Debtor's Station because that schedule relates only to owned real estate, not the value of leases, and amended Schedule G (executory contracts and leases) included the Puma lease. Based on her review, she unequivocally testified that the Debtor had not diverted any assets to the detriment to the estate and all rental income from the Puma leases was traceable and used to maintain the Debtor's business operations. She also confirmed, as the Debtor testified, that prior to the bankruptcy filing he had been unable to maintain his operations and pay his creditors.

Additionally, the court found credible the Debtor's explanations that his pre-petition actions were taken to protect the rents from the Puma leases and the gas stations for the benefit of all creditors in the face of aggressive collection actions by one creditor for a debt relating to the failed operations of Western Petroleum. It accepted as uncontroverted and corroborated by CPA Barroso, the Debtor's testimony that after the transfer of the Debtor's Station to Hi Speed, Hi Speed's monthly payments to him for rent and salary were used to pay his creditors and living expenses. Although it presses its arguments vigorously, USIC simply presented no evidence to support its claims that those payments were excessive or unnecessary. Unfortunately for USIC, vehemence is no substitute for evidence.

The court declined to make the inferences USIC argued should be made because of what it maintained was deliberate concealment of material information and misleading information by the Debtor from the outset of the case. The testimony of the Debtor and CPA Barroso adequately support the bankruptcy court's contrary findings and conclusions that USIC failed to prove its contentions. Again the court found reasonable the Debtor's explanation for the incorrect listing of the dates of the transfers in the statement of financial affairs as an unintentional mistake which he corrected in the disclosure statement. It also accepted as credible the Debtor's testimony that in completing his schedules and statement of financial affairs and discussing the value of Hi Speed at the Creditors' Meeting he had relied on an *amended* 2010 financial statement showing a negative value for Hi Speed. And the Debtor emphasized that immediately after he rescinded the transfers, he amended his schedules and the disclosure statement to include the Debtor's Station, the Puma lease, the Hi Speed shares, the rental income from the Debtor's Station, and the operating expenses associated with the administration of the Puma and Hi Speed leases, and attached copies of the rescission deed and the Puma leases as exhibits to the latter. USIC did not submit evidence that would cause us to conclude that the court's credibility assessments and factual findings were clearly erroneous.

Finally, USIC takes issue with the bankruptcy court's reliance on CPA Barroso's expert opinion that the transfers had no material effect upon the bankruptcy estate as the basis for denying the appointment of a trustee. According to USIC, the loss of value to the estate is not a prerequisite to finding cause for the appointment of a trustee where there is fraud and dishonesty by a debtor-in-possession.

While an argument could be made that an action to recover a fraudulent transfer may be defeated where there is proof that the bankruptcy estate was not actually diminished by the transfer, this is not determinative for the § 1104(a)(1) analysis (or for that matter the considerations under § 1104(a)(2)). *See, e.g., Grayson Consulting, Inc. v. Wachovia Securities, LLC (In re Derivium Capital, LLC)*, 716 F.3d 355 (4th Cir.2013). Here the bankruptcy court's discussion of the lack of a monetary loss to the estate as a result of such transfers was by no means the sole factor it considered. Nor can its finding of lack of intent by the Debtor to conceal such transfers or to defraud or deceive his creditors be overlooked. There is no clear error in the court's adoption of CPA Barroso's expert opinion that there was no monetary loss to the estate and no assets transferred outside the reach of creditors because the rents were used to pay the mortgages against the two gas stations. USIC submitted no testimony or rebuttal evidence to persuade the court to reject her testimony or her conclusions as an experienced certified public and forensic accountant.

After carefully reviewing the evidence, or lack thereof, we find no clear error by the bankruptcy court and no abuse of discretion in its determination that cause to appoint a chapter 11 trustee under § 1104(a)(1) was lacking.

## B. Interest of Creditors and the Estate Under § 1104(a)(2).

▮▮▮▮ Our review must now shift to the second prong of § 1104(a) for divesting a debtor-in-possession of control of the case. A bankruptcy court may appoint a trustee if it finds such appointment to be in the interests of the creditors and other interests of the estate. *See* 11 U.S.C. § 1104(a)(2); *see also In re Sundale, Ltd.*, 400 B.R. at 901 ("Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists.") (citation omitted) (internal quotation omitted). A court's review under § 1104(a)(2) is materially different from that under the first subsection of 1104(a). *Petit*, 182 B.R. at 69. Its standards for the appointment of a trustee are more flexible than those under subsection (a)(1). *In re LHC, LLC*, 497 B.R. at 293; *Tradex*, 339 B.R. at 829. This application "entails the exercise of a spectrum of discretionary powers and equitable considerations." *Petit*, 182 B.R. at 69 (citation omitted) (internal quotation omitted). "[C]ourts must determine on a case-by-case basis whether the circumstances of each bankruptcy requires the appointment of a trustee under subsection (a)(2)." *Id.* (citation omitted).

▮▮▮▮ The considerations require a balancing of competing interests. "Determining whether appointment of a trustee is in the interests of the various constituencies of the estate is fact-specific and requires the court to balance the benefits of such an appointment against its anticipated costs." *In re LHC, LLC*, 497 B.R. at 293 (citation omitted). Some factors to be considered are: (1) the trustworthiness of the debtor, (2) the past and present performance of the debtor and the prospects for rehabilitation, (3) the confidence level of creditors and the business community in the debtor, and (4) whether the

benefits of appointing a trustee outweigh the associated costs. *Id.* (citation omitted); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 227 (Bankr.E.D.N.Y.2010). In many instances the bankruptcy court's considerations relating to cause under § 1104(a)(1) and the best interests of the creditors under § 1104(a)(2) are "intertwined and dependent upon the same facts." *In re Grasso*, 490 B.R. 500, 506 (Bankr.E.D.Pa. 2013).

Circumstances in which courts have appointed trustees under § 1104(a)(2), as well as under (a)(1), in the absence of fraud or dishonesty are when the debtor-in-possession suffers from conflicts of interest which impact its ability to fulfill its fiduciary duties. *See In re Taub*, 427 B.R. at 227 (citing *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y.2008)).

■ USIC argues that a conflict of interest exists in this case justifying the appointment of a trustee in the best interest of creditors. To support its argument it asserts that the Debtor, as the sole owner of Hi Speed, has failed to fulfill its fiduciary duties by not pursuing Hi Speed after the rescission of the transfers for the turnover of $119,500, plus interest, which it was obligated to remit to the estate under P.R. Laws Ann. tit. 31, § 3496.[7] It calculates this sum based on Hi Speed's receipt of monthly rent of $17,500 from Puma during the pre-rescission period, less the monthly mortgage payments of $10,000 to BPPR, leaving a monthly surplus of $7,500. USIC acknowledges Hi Speed would be entitled to a $5,000 credit for the purchase price paid for the Debtor's Station, thereby resulting in a net amount due the estate of $119,500.

This challenge fails because there is no clear error in the bankruptcy court's finding that there was no such potential cause of action against Hi Speed. It concluded that "CPA Barroso's testimony that the asset transfers had no material effect upon the estate remains in the court's view uncontested," and "USIC did not meet its burden of proof that such cause of action exists." CPA Barroso testified unambiguously that in fact there was no "monthly surplus of $7,500" because Hi Speed expended all of the monthly rental income from Puma to meet its monthly business expenses consisting of the BPPR mortgage, the cost incurred for the administration of the Puma lease, and the payments to the Debtor for the rental of the office space and his salary. USIC did not offer any evidence to contradict this testimony. And although it vigorously argued that these expenses, other than the mortgage expense, were inflated, fabricated, or completely unnecessary, it failed to submit any evidence to support its assertions.

Lastly, the bankruptcy court did not abuse its discretion in concluding that USIC's other arguments were insufficient to meet its burden of proof for the appointment of a trustee. Once again, USIC failed to offer sufficient evidence to establish that the costs of a trustee outweighed the benefits to be gained by the estate. And despite its arguments to the court in its opening statement at the evidentiary hearing, USIC never delivered the evidence to demonstrate that the value of the assets if sold by a trustee would generate funds sufficient to pay the secured creditors in full and leave a balance for other creditors. Nor did it offer evidence that the Debtor's rehabilitation prospects were in jeopardy, or that the business communi-

---

**7.** Although USIC did not assert in its motion for the appointment of a trustee that the Debtor's estate has a colorable claim against Hi Speed for monies it collected after the pre- petition transfers of the Debtor's Station, it asserted the argument at the evidentiary hearing and in its post-trial memorandum of law.

ty and the other creditors lacked confidence in the Debtor and his ability to reorganize his financial affairs to fairly address their claims. *See In re LHC, LLC,* 497 B.R. at 293.

Thus, the bankruptcy court did not abuse its discretion in determining that USIC did not meet its burden of demonstrating that the appointment of a trustee was in the best interests of creditors and the estate.

## CONCLUSION

In view of the evidence submitted at the two-day hearing and the detailed findings of fact and conclusions of law adequately supported by the record, USIC has not persuaded us that the bankruptcy court committed reversible error or abused its discretion in determining that the appointment of a trustee was not warranted under § 1104(a)(1) or § 1104(a)(2). Consequently, we **AFFIRM**.