# United States Court of Appeals

## For the First Circuit

No. 16-9007

IN RE: PEDRO LÓPEZ-MUÑOZ

Debtor

UNITED SURETY & INDEMNITY COMPANY,

Appellant,

v.

PEDRO LÓPEZ-MUÑOZ,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Carlos Lugo Fiol, with whom Héctor Saldaña-Egozcue, José A. Sánchez Girona, and Saldaña and Saldaña-Egozcue, PSC, were on brief, for appellant.

Luisa S. Valle Castro, with whom Carmen D. Conde Torres and C. Conde and Associates, were on brief, for appellee.

August 9, 2017

**BARRON**, <u>Circuit Judge</u>.  This case concerns an appeal from a bankruptcy court's decision, under 11 U.S.C. § 1104(a), to deny a creditor's motion to appoint a trustee for the bankruptcy estate to replace the debtor in possession of that estate.  We affirm.

## I.

The appellee in this case is the debtor in possession of the estate, Pedro López-Muñoz.  Prior to filing a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, López was an owner, either in whole or in part, of two petroleum products companies.  The two companies were Western Petroleum Enterprises, Inc. ("WP"), of which López owned 50% of the shares, and Hi Speed Gas Corp. ("HSGC"), of which López owned 100% of the shares.  <u>In re Muñoz</u>, 544 B.R. 266, 269 (Bankr. D.P.R. 2016).  The appellant in this case is United Surety and Indemnity Co. ("USIC"), which is one of López's creditors.  USIC became a creditor of López by obtaining an indemnity agreement that López guaranteed for certain of WP's obligations.  <u>Id.</u>

Although a debtor who has filed a petition for bankruptcy under Chapter 11 generally continues to manage the bankruptcy estate as the debtor in possession, the bankruptcy court may, pursuant to § 1104(a), appoint a trustee to manage the estate instead of the debtor. Specifically, § 1104(a) provides that "the [bankruptcy] court shall order the appointment of a trustee -- (1)

- 2 -

for cause, including fraud, dishonesty, incompetence, or gross mismanagement . . . ; or (2) if such appointment is in the interests of creditors . . . ."  This appeal concerns the motion that USIC filed under § 1104(a) to have the Bankruptcy Court appoint a trustee of the bankruptcy estate to replace López.

Given the large number of issues USIC asks us to resolve in this appeal, we need to review in some detail the facts underlying the dispute, the arguments that the parties made to the Bankruptcy Court and the Bankruptcy Appellate Panel ("BAP"), and the rulings that those courts made below.  This review will help clarify the issues, if any, that USIC is now raising for the first time in this appeal and thus that are not properly before us.

We begin by recounting certain undisputed facts that concern the run-up to López's filing of his petition for bankruptcy under Chapter 11.  We then review the travel of the case following that filing, including the decisions below.

**A.**

In March 2013, López owned 100% of the shares of HSGC. Muñoz, 544 at 269.  At that time, HSGC owned a gas station in Hormigueros, Puerto Rico ("Hormigueros station").  Id.  Also, at the same time, López personally owned a gas station in Mayagüez, Puerto Rico ("Mayagüez station").  Id. at 270.

On April 8, 2013, López, acting on behalf of HSGC, executed a 20-year lease of the Hormigueros station with Puma

Energy Caribe LLC ("Puma"). Id. at 269-70. HSGC's lease to Puma of the Hormigueros station called for an initial $32,000 monthly rental payment from Puma to HSGC. Id. The HSGC lease to Puma of that station also provided that Puma would make an advance payment to HSGC of $125,000. Id. at 270. Under that lease, HSGC was to repay the advance payment through a $500 per month reduction in the monthly rental payment that Puma owed to HSGC under the lease of that station. Id.

On the same day, April 8, 2013, López, acting on his own behalf, executed a 20-year lease to Puma of the Mayagüez station that he personally owned. Id. That lease provided for an initial $18,000 monthly rental payment from Puma to López. Id. That lease also provided for an advance payment of $125,000 from Puma to López, which would be repaid to Puma by López by means of a $500 per month reduction in the monthly rental payment that Puma owed to López under the lease on the Mayagüez station. Id. Both leases to Puma made Puma responsible for "all costs related to their operation," such that "the rents received by [HSGC] and by the debtor under these leases were free and clear of any operating expenses." Id. at 272.

On April 11, 2013, López transferred his interest in the Mayagüez gas station, including the lease to Puma, to HSGC in return for $5,000. Id. at 270. That same day, López transferred his shares in HSGC by "donat[ing]" them to a trust. Id. The

- 4 -

trust, named the "La Familia Trust," had been created by López's son on April 1, 2013. That trust named López as the sole beneficiary of the La Familia Trust and López's children as substitute beneficiaries. The trustee of that trust was listed as López's spouse. Id. at 271.

On May 17, 2013, after López had made the two transfers (of the Mayagüez station to HSGC and of the HSGC shares to the La Familia Trust), one of WP's creditors, Banco Santander Puerto Rico, garnished $182,435.66 in funds from López's personal bank account. Id. at 270. Banco Santander Puerto Rico did so based on López's personal guarantee of WP obligations to Banco Santander Puerto Rico. Id. The amount garnished included the $125,000 that Puma had paid to López as Puma's advance payment on the lease that Puma had executed with López for the Mayagüez station. Id.

**B.**

On October 1, 2013, López filed his petition for bankruptcy under Chapter 11. In the initial statement of financial affairs that he submitted with the filing, López disclosed the pre-petition transfer of the Mayagüez gas station to HSGC and the transfer of the HSGC shares to the La Familia Trust. López's statement did not specifically disclose the revenue that was owed by Puma under the two gas station leases that had been executed with Puma. Id. at 272-73.

- 5 -

In the initial statement of financial affairs, López wrote that the date for the transfer of the HSGC shares to the La Familia Trust was March 2013. The date of the transfer was actually April 11, 2013. Id. at 273. López also represented in the initial statement of financial affairs that the shares of HSGC that had been transferred to the La Familia Trust had "no value." Id. The statement also disclosed that, after filing the bankruptcy petition, López collected $5,000 a month from HSGC in salary for his work as an officer of the company and $10,000 a month in rent from HSGC for office space that he leased to HSGC. Id. at 272.

On November 1, 2013, the first meeting of creditors in connection with López's bankruptcy filing was held. Id. At that first meeting of creditors, USIC inquired about the transfer of the HSGC shares to the La Familia Trust that López had disclosed on his initial statement of financial affairs. Id. López stated at that meeting that the beneficiaries of the La Familia Trust were his four children. He did not state that he was in fact the sole beneficiary of that trust and that his children were merely substitute beneficiaries. Id. at 272-73.

On April 15, 2014, López filed a disclosure statement with the Bankruptcy Court in which he indicated that his purpose in transferring the Mayagüez station to HSGC was to "preserve the property because of difficulties in making mortgage payments." Id. at 273-74. This disclosure statement, like his earlier initial

statement of financial affairs, did not disclose either of the gas station leases that Puma had executed. And that statement did not disclose the amount of money that Puma owed in connection with its lease for either the Mayagüez station or the Hormigueros station. Id. at 274.

On July 17, 2014, USIC filed an objection to the disclosure statement that López had filed with the Bankruptcy Court and a request that the Bankruptcy Court appoint a trustee under § 1104(a). Id. at 268. In that motion, USIC contended, among other things, that the transfer of the Mayagüez gas station to HSGC and the transfer of the HSGC shares to the La Familia Trust constituted transfers to "hinder, delay, or defraud" a creditor under 11 U.S.C. § 548(a)(1)(A). That provision of the Bankruptcy Code authorizes the trustee of the bankruptcy estate to avoid certain pre-petition transfers made with such an intent. Id. Accordingly, USIC argued that the bankruptcy estate had a cause of action against HSGC to avoid the transfers under § 548 and recover the assets for the benefit of the estate. USIC further contended that López, due to his ties to HSGC, had a conflict of interest with respect to bringing that action. USIC therefore requested that the Bankruptcy Court appoint a trustee of the bankruptcy estate under § 1104(a) "so that [the trustee] can pursue for the benefit of the bankruptcy estate the avoidance and recovery" of the challenged transfers.

On August 29, 2014, López rescinded the transfer of the Mayagüez gas station to HSGC and the transfer of the HSGC shares to the La Familia Trust.  Id. at 274.  On that same day, López filed with the Bankruptcy Court an amended "disclosure statement, schedules, and statement of financial affairs to disclose the reversal of the asset transfers."  Id.  The filings also disclosed the lease that López had executed with Puma for the Mayagüez station.  Id.

Notwithstanding López's rescission of the transfers of the Mayagüez station to HSGC and of the HSGC shares to the La Familia Trust, HSGC did not repay to the bankruptcy estate the lease income that HSGC collected from Puma during the time that HSGC owned the Mayagüez station in consequence of the prior transfer by López of that station to HSGC. Id. at 274.

After the rescission of the transfers, López began receiving only $5,000 a month in rent from HSGC for the office space that he had leased to HSGC.  Id. at 272.  Prior to the rescission, López had been receiving $10,000 a month in rent from HSGC for the office space that he had leased to HSGC.  Id.  The reduction reflected the fact that, after the rescission, HSGC was managing only one gas station.  Id.

### C.

On July 14 and 15, 2015, the Bankruptcy Court held an evidentiary hearing on USIC's motion to appoint a trustee of the

bankruptcy estate pursuant to § 1104(a). At that hearing, López testified as follows regarding the reason for the transfer of the Mayagüez gas station to HSGC and the transfer of the HSGC shares to the La Familia Trust: "I could not pay the mortgage. We were losing money, that's why we took the decision, and also to protect the income."[1]

López then testified that, after he had transferred the Mayagüez station to HSGC, he used the revenue that HSGC received from Puma under its lease of the Mayagüez station to make the payments for the mortgage on that station. López also testified that, after the transfer to HSGC of that station had been rescinded, he continued to use that revenue to pay the mortgage on the Mayagüez station. In addition, López testified that the incorrect date on the disclosure of the transfer of the HSGC shares was an "honest mistake," and that the incorrect identification of his children as the beneficiaries of the La Familia Trust was the result of his thinking that "at first I'm the beneficiary. The thing is that the law of life is that I'm supposed to go first so at the end they will be the beneficiary; that's why I answer like that."

---

[1] It appears that López's object was to prevent Banco Santander Puerto Rico from garnishing the income from Puma's lease for the Mayagüez station in order to ensure that López could use that income to make the mortgage payments that he owed on the mortgage for the Mayagüez station.

López's certified public accountant ("CPA"), Doris Barroso, also testified at the evidentiary hearing. Barroso had performed a valuation of the shares of HSGC. Barroso explained that she based her valuation on audited financial statements of HSGC that were dated June 30, 2013. Barroso testified that HSGC had a negative book value, because HSGC's liabilities exceeded its assets. Barroso also testified that, during the time that HSGC owned both the Mayagüez and Hormigueros stations, the operation of each station created negative cash flow because HSGC's expenses for each station exceeded the lease revenue that HSGC received from Puma for each station. Barroso explained in this regard that all of the lease revenue that HSGC received from Puma was "used to pa[y] the . . . mortgage, to pay the minimum . . . operating expense[s] that they have, and their rent to Mr. Pedro López" for the office space that HSGC leased from López.

In addition, Barroso testified that she found no evidence of fraud, diversion of funds, or hiding of assets in López's bankruptcy filings. She explained that López's filings regarding the two transfers contained "no falsification of information" and "no omission of information." Finally, Barroso concluded that the transfers resulted in no "monetary loss" to the bankruptcy estate.

USIC's CPA, Rafael Pérez Villarini, also testified at the evidentiary hearing. Pérez testified only as a rebuttal

witness.  In that capacity, Pérez testified that Barroso had not established the appropriate "procedures and analysis" to perform a valuation of HSGC.  Pérez was asked whether he agreed with Barroso's conclusion that there was no monetary loss to the bankruptcy estate as a result of the transfers.  Pérez replied that he "ha[d] no basis to . . . reach a conclusion in that."

**D.**

Following the evidentiary hearing, on August 19, 2015, both parties submitted to the Bankruptcy Court proposed findings of fact and conclusions of law.  USIC subsequently withdrew its proposed findings of fact and conclusions of law and refiled an amended version on August 21, 2015.

In its amended filing, USIC contended that a determination of fraud under § 1104(a)(1), such that a bankruptcy court "shall" appoint a trustee, is made by reference to state or territorial law.  USIC then contended that, under Puerto Rico law, the transfer of the HSGC shares to the La Familia Trust was presumed to be fraudulent because López had donated the shares. Id. at 276; see P.R. Laws Ann. tit. 31, § 3498.  USIC also argued that "the myriad of intentional omissions and misrepresentations committed by [López] in this case clearly merits the appointment of a trustee in this case."

In the course of describing those alleged omissions and misrepresentations, USIC stated that López, in his April 15, 2014

- 11 -

disclosure statement, had "represented to the court that he had transferred the Mayagüez station to [HSGC] because he could not pay the mortgage." But, USIC argued, that representation could not be true. USIC explained that López knew that he was slated to receive more revenue from Puma under the lease to Puma of the Mayagüez station than López would need in order to be able to make the payments for the Mayagüez station's mortgage.

USIC also argued that, because, during the time that HSGC owned the Mayagüez station, HSGC had collected lease revenue from the Mayagüez station in excess of the amount needed to make the mortgage payments on that station, the "bankruptcy estate has a cause of action for turnover of property in the amount of $119,500 plus interest against [HSGC], which is solely owned by the Debtor." However, USIC contended that López faced a conflict of interest because he was both the trustee of the bankruptcy estate, which had a potential turnover action against HSGC, and the sole owner of HSGC. USIC then argued that "such conflict of interest constitutes cause for appointment of a Chapter 11 trustee" under § 1104(a). USIC also argued that, even if the existence of the turnover action did not give rise to a conflict of interest that necessitated López's replacement as trustee of the bankruptcy estate, López nevertheless "breached his duty to bring a turnover action against [HSGC], which . . . constitute[s] gross

- 12 -

mismanagement of the affairs of the debtor and . . . grounds for appointment of a trustee."[2]

USIC separately contended that the operating expenses of the Mayagüez station that Barroso had taken into account in her analysis of the valuation of the HSGC shares were "completely fabricated in order to artificially create a deficit in the otherwise profitable [lease]." USIC thus contended that "the misapplication of these so-called costs to [HSGC's] revenue to artificially devalue its shares constitutes gross mismanagement by the debtor-in-possession of the most important of all of the estate's assets, which merits the appointment of a trustee in this case."

For his part, López, in his proposed findings of fact and conclusions of law, contended that he transferred the Mayagüez station to HSGC and the HSGC shares to the La Familia Trust in order to "protect the only income the Debtor had (the rent from the leases) from the aggressive collections actions of just one creditor in order to be able to pay his secured creditor and avoid the foreclosure of the gas stations." López further contended that he "always acted with full honesty"; that "his actions protected the income and the assets related to the leases"; and

---

[2] USIC did not raise the argument that it had made in its first motion to appoint a trustee, that the bankruptcy estate had a cause of action against HSGC under 11 U.S.C. § 548.

- 13 -

that "all income received from the transfers was traceable and was used to pay the mortgages and maintain the operations."

**E.**

Having considered the parties' proposed findings of fact and conclusions of law, the Bankruptcy Court on January 15, 2016 denied USIC's motion to appoint a trustee of the bankruptcy estate under § 1104(a). After making a series of factual findings regarding, among other things, what López had and had not disclosed, the Bankruptcy Court laid out the standard for appointing a trustee of the bankruptcy estate under both § 1104(a)(1) and 1104(a)(2). Id. at 275. The Bankruptcy Court also noted that, under both subsections of § 1104(a), USIC bears the burden of showing that a trustee should be appointed. Id.

The Bankruptcy Court then summarized USIC's arguments in favor of appointing a trustee to replace López. The Bankruptcy Court characterized USIC as arguing that:

> (i) the debtor's donation of his [HSGC] shares to La Familia trust is presumed to be fraudulent under the Puerto Rico Civil Code; (ii) following the rescission of the transfer, the debtor's estate now has a cause of action against [HSGC] for the turnover of estate property in the amount of $119,500, plus interest; (iii) the transfers of assets disclosed by the debtor in his statement of financial affairs were done in April 2013, and not March 2013 as stated; (iv) the debtor falsely stated in his first disclosure statement that the reason that he transferred the debtor's gas station to [HSGC] was because he could not pay the mortgage with Banco

- 14 -

Popular; (v) the debtor falsely stated at the meeting of creditors that the beneficiaries of the La Familia Trust were his children and not him; (vi) the debtor falsely stated that his [HSGC] shares were worthless at the meeting of creditors and in the statement of financial affairs; and (vii) the leases with Puma for the gas stations were not disclosed in the first disclosure statement.

Id. at 276. The Bankruptcy Court characterized López as arguing that he

always acted with honesty, neither hid any information nor diverted any asset in detriment to the estate, showed that his actions were to protect the rents from the leases and the properties that produced that rental income, . . . that all rental income received from leases is traceable and was used to pay the secured creditor whose collateral generate that income and maintain the debtor's business operations . . . [, and] that he sought to protect his assets from the aggressive collection actions of just one unsecured creditor.

Id.

Turning to the merits of the arguments presented, the Bankruptcy Court first stated that, under the Puerto Rico Civil Code, the transfer that López made of the HSGC shares to the La Familia Trust was presumptively fraudulent. Id. But, the Bankruptcy Court found, López had rebutted the presumption that López acted fraudulently in donating the shares. The Bankruptcy Court relied on what it deemed to be Barroso's "credible and convincing" testimony that the two transfers -- the transfer of the Mayagüez station to HSGC and the transfer of the HSGC shares

- 15 -

to La Familia Trust -- had "no material effect" on the bankruptcy estate.  Id.  In so concluding, the Bankruptcy Court noted the testimony by USIC's CPA, Pérez, that he had "no basis" on which to reach a conclusion about that assessment by Barroso.  Id. at 277.

The Bankruptcy Court also rejected USIC's argument that the estate has a turnover cause of action against HSGC for $119,500.  In rejecting that argument, the Bankruptcy Court relied on its determination that "Barroso's testimony that the asset transfers had no material effect upon the estate remains in the court's view uncontested.  Thus, USIC did not meet its burden of proof that such cause of action exists."  Id.

Finally, the Bankruptcy Court explained that it was "not persuaded by the several other grounds raised by USIC" for appointment of a trustee under § 1104(a) because "they either were not material to the [§ 1104(a)] analysis or do not rise to the level of misconduct requiring the appointment of a chapter 11 trustee."  Id.  The Bankruptcy Court went on to conclude that "in many instances, the debtor was able to provide an acceptable explanation for his actions.  For example, the debtor was able to show that he relied on an amended financial statement for the year 2010 when he indicated that the [HSGC] shares had no value."  Id.

## F.

USIC appealed the Bankruptcy Court's decision to the BAP, which affirmed the Bankruptcy Court's ruling.  In re López-

Muñoz, 553 B.R. 179 (1st Cir. BAP 2016). The BAP stated that it reviewed the Bankruptcy Court's factual findings regarding the appointment of a trustee for clear error, the Bankruptcy Court's conclusions of law de novo, and the Bankruptcy Court's determination of whether "the evidence is sufficient to establish 'cause' for the appointment of a trustee or such appointment is in the interests and creditors and the estate under § 1104(a)" for abuse of discretion. Id. at 188-89.

After describing the standard for appointing a trustee under § 1104(a), the BAP reviewed USIC's argument that, under § 1104(a)(1), the Bankruptcy Court was required to appoint a trustee of the bankruptcy estate. Id. at 190. The BAP characterized USIC as arguing that "the Debtor's pre-petition transfers of assets . . . are presumed to be fraudulent, citing to Article 1249 of the Puerto Rico Civil Code," see P.R. Laws Ann. tit. 31, § 3498, and that the appointment of a trustee was also required under § 1104(a)(1) because of the various omissions and misrepresentations by the debtor. 553 B.R. at 191. The BAP then stated that courts look to the "totality of the circumstances" in determining whether a debtor acted "to defraud creditors." Id.

The BAP found "no reason to reverse" the Bankruptcy Court's application of the Puerto Rico statutory presumption of fraud -- which "did not prejudice USIC" -- but noted that the Bankruptcy Court's exclusive reliance on that presumption "would

- 17 -

be misplaced" because federal law, not Puerto Rico law, defines the meaning of fraud under § 1104(a)(1). Id. at 192. Thus, the BAP considered whether the Bankruptcy Court erred in ruling that the transfers were not "undertaken to defraud" López's creditors under the "broader" federal definition of fraud. Id. at 191-92.

The BAP began by listing seven "objective indicia" of fraudulent intent from a slightly different bankruptcy-fraud context. Id. at 193 (quoting In re Marrama, 445 F.3d 518, 522 (1st Cir. 2006)).[3] The BAP then concluded that:

> Although the bankruptcy court did not specifically discuss the badges of fraudulent intent set forth in Marrama, we are satisfied from our review of the record, including the trial transcript, that the bankruptcy court fully considered all the evidence adduced at the two-day hearing and the totality of the circumstances in reaching its factual findings and its legal conclusions. Its decision contains more than fourteen pages of factual findings . . . . We find no abuse of discretion in the bankruptcy court's determination that USIC failed to refute the Debtor's evidence that he did not intend to defraud his creditors and the estate suffered no loss as a result of the pre-petition transfers. Similarly, we find no reversible error in the bankruptcy court's acceptance of the Debtor's explanations as credible and reasonable, finding that the Debtor did not conceal information and any incorrect information provided by the Debtor was unintentional and

---

[3] Marrama concerned the application of 11 U.S.C. § 727(a)(2)(A), which limits the bankruptcy court's authority to grant the debtor a discharge if the debtor transferred property "with actual intent to hinder, delay, or defraud a creditor." 445 F.3d at 522.

> not done with the intent to deceive or mislead
> his creditors."

Id. at 193-94 (footnote omitted).

The BAP also rejected USIC's argument that, because the Bankruptcy Court relied on its determination that the transfers had no material effect on the bankruptcy estate in concluding that López had not engaged in fraud under § 1104(a)(1), the Bankruptcy Court had erred. The BAP stated that "the bankruptcy court's discussion of the lack of monetary loss to the estate as a result of such transfers was by no means the sole factor it considered. Nor can its finding of lack of intent by the Debtor to conceal such transfers or to defraud or deceive his creditors be overlooked." Id. at 195.

Finally, the BAP reviewed USIC's argument that a trustee for the bankruptcy estate should be appointed under § 1104(a) because the estate had a cause of action for turnover against HSGC. In so arguing, USIC reasoned that this cause of action created a conflict of interest for López in his capacity as trustee of the bankruptcy estate, because he was also the owner of HSGC. Id. at 196. The BAP rejected this argument on the ground that "there is no clear error in the bankruptcy court's finding that there was no such potential cause of action against [HSGC]," because USIC "did not offer any evidence to contradict" Barroso's testimony that

- 19 -

HSGC expended all of its monthly rental income to meet its monthly business expenses.  Id.[4]

**G.**

After the BAP ruled against USIC, USIC filed a motion for rehearing, which the BAP denied.  USIC then filed this appeal to us.

**II.**

We review appeals from the BAP "under the same standards of review as the BAP reviews appeals from the bankruptcy court." In re Handy, 624 F.3d 19, 21 (1st Cir. 2010).  "We review the bankruptcy court's legal conclusions de novo, its findings of fact for clear error, and its discretionary rulings for abuse of discretion."  In re Hoover, 838 F.3d 5, 8 (1st Cir. 2016).  Whether to appoint a trustee under § 1104(a) is a discretionary ruling, so we will review that decision for an abuse of discretion.  See Tradex Corp. v. Morse, 339 B.R. 823, 832 (D. Mass. 2006); accord In re Marvel Entm't Grp., Inc., 140 F.3d 463, 470 (3d Cir. 1998).

---

[4] The BAP did not separately address USIC's argument, which it had also made to the Bankruptcy Court, that the the debtor's failure to pursue the turnover action against HSGC constituted "gross mismanagement" that justified appointment of a trustee, independently of any conflict of interest.  Presumably, the BAP did not separately address that argument because the BAP affirmed the Bankruptcy Court's finding that no such turnover cause of action existed.  The BAP also did not address USIC's argument to the Bankruptcy Court that López artificially devalued the shares of HSGC by including fabricated costs on its financial statements, and thereby committed gross mismanagement, because USIC did not raise this argument to the BAP.

In doing so, we are mindful that the burden is on the movant to prove that a trustee should be appointed under § 1104(a), see In re G-I Holdings, Inc., 385 F.3d 313, 317-18 (3d Cir. 2004), as "[t]he appointment of a chapter 11 trustee is considered to be an 'extraordinary' act since, in the usual case, the debtor remains a debtor-in-possession throughout the reorganization." Petit v. New Eng. Mortg. Servs. Inc., 182 B.R. 64, 68 (D. Me. 1995) (quoting In re Ionosphere Clubs, Inc., 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)).[5]

**A.**

We begin with USIC's arguments as to why the Bankruptcy Court erred in determining that appointment of a trustee was not justified under § 1104(a)(1). In support of that argument, USIC first contends that the Bankruptcy Court erred as a matter of law in concluding that, because the transfers of the Mayagüez station to HSGC and of the HSGC shares to the La Familia Trust had no materially adverse effect on the bankruptcy estate, López did not act fraudulently in making those transfers. In pressing this

---

[5] The parties dispute whether the movant must meet this burden by clear and convincing evidence, or by a preponderance of the evidence. Courts are divided on this issue, and we have not taken a position on this question before. Tradex Corp. v. Morse, 339 B.R. 823, 826-27 (D. Mass. 2006). But, here, the Bankruptcy Court found that USIC did not carry its burden under either standard, In re Muñoz, 544 B.R. at 275, and, even assuming the more favorable standard for USIC applies, we still affirm. Thus, we need not address the issue of which standard is the right one.

contention, USIC argues that courts have made clear that a fraudulent conveyance does not cease to be fraudulent merely because the conveyance does not adversely impact the value of the bankruptcy estate. And thus, USIC argues, the Bankruptcy Court erred as a matter of law by premising its ruling that no "fraud" within the meaning of § 1104(a)(1) occurred on the absence of evidence that the transfers in question had a material effect on the value of the bankruptcy estate.

The Bankruptcy Court did not find, however, that, even though López made the transfers fraudulently, the fraud resulted in no harm to the bankruptcy estate and thus was not "fraud" under § 1104(a)(1). Rather, as the BAP explained, the Bankruptcy Court took account of the transfers' lack of materially adverse impact on the bankruptcy estate in making a judgment, under the totality of the circumstances, that, in making the transfers, López did not "engage[] in fraud upon creditors" for purposes of § 1104(a)(1). In re Muñoz, 544 B.R. 275-77; In re López-Muñoz, 553 B.R. at 195 ("Here the bankruptcy court's discussion of the lack of a monetary loss to the estate as a result of [the] transfers was by no means the sole factor it considered.").

We have made clear, outside the context of § 1104(a)(1), that a finding of fraudulent intent (or lack thereof) is one that "normally is determined from the totality of the circumstances." Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir. 1996). And USIC

- 22 -

does not identify any authority to suggest that, in evaluating the totality of the circumstances, the effect of the transfer on the estate's value is an impermissible consideration under § 1104(a)(1). In consequence, given that we have previously concluded, albeit outside the context of § 1104(a), that "[e]ven when the totality of the circumstances might plausibly support an inference of skullduggery, the bankruptcy court's contrary finding must be credited unless the evidence is so one-sided as to compel the inference of fraud," we see no basis for reversal of this aspect of the Bankruptcy Court's ruling. In re Carp, 340 F.3d 15, 25 (1st Cir. 2003).

USIC also argues that the Bankruptcy Court erred in finding an absence of fraud for purposes of § 1104(a)(1) for another reason. USIC contends that, under the Supreme Court's decision in Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581 (2016), which was decided after the Bankruptcy Court ruling in this case, USIC needed only to prove that López had engaged in a "transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration, regardless of whether the scheme involved a false representation." And, USIC contends, it "succeeded" in proving at least that much.

Husky, however, concerned what must be proved to satisfy 11 U.S.C. § 523(a)(2)(A), which is a provision of the Bankruptcy

- 23 -

Code that limits a debtor's ability to discharge certain debts. As a result, Husky does not purport to address what constitutes "fraud" under § 1104(a)(1). 136 S. Ct. at 1586. Moreover, Husky stated that "[f]raudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration.'" Id. at 1587 (emphasis added) (quoting BFP v. Resolution Tr. Corp., 511 U.S. 531, 540-41 (1994)). And, as we have just explained, our precedent outside of the context of § 1104(a)(1) emphasizes that a finding of fraud must rest on the "totality of the circumstances." Thus, in light of USIC's failure to identify any precedent to the contrary under § 1104(a)(1), Husky hardly suffices to establish that, under § 1104(a)(1), any transfer to a close relative, secret transfer, transfer of title without transfer of possession, or transfer for grossly inadequate consideration is necessarily fraud within the meaning of § 1104(a)(1), regardless of the other circumstances. See Carp, 340 F.3d at 25.

USIC next contends that the Bankruptcy Court erred in assessing whether fraud within the meaning of § 1104(a)(1) occurred because the Bankruptcy Court failed to appropriately consider circumstantial evidence. USIC first contends that, under § 1104(a)(1), an intent to defraud a creditor through a prepetition transfer of property may be proved by circumstantial evidence.

And, USIC further contends, the facts found by the Bankruptcy Court met most of the factors that we identified in Marrama as circumstantial indicia of fraudulent intent in making a transfer.

In Marrama, in applying 11 U.S.C. § 727(a)(2)(A), which concerns limitations on a debtor's ability to obtain a discharge of debts, we identified the following factors as indicia of fraud:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.

445 F.3d at 522 (citation omitted).  USIC contends that the Bankruptcy Court erred in concluding that López did not act fraudulently under § 1104(a)(1) because the Bankruptcy Court failed to consider those Marrama factors at all, notwithstanding that the factors -- when applied to the facts that the Bankruptcy Court did find -- indicated that López acted fraudulently.

This argument fails, however, because USIC misapprehends the Bankruptcy Court's ruling.  The Bankruptcy Court made findings as to the relationships between the debtor, HSGC, and the La Familia Trust, In re Muñoz, 544 B.R. at 271; the retention of the

benefit of the Mayagüez station, id. at 272; the value of the assets transferred, id. at 271; the financial state of the debtor before and after the transfers, id. at 272; the chronology of the transfers at issue, id. at 270; and the debtor's statements disclosing the transfers, id. at 272-74. Thus, as the BAP explained, "[a]lthough the bankruptcy court did not specifically discuss the badges of fraudulent intent set forth in Marrama," the record revealed that "the bankruptcy court fully considered all the evidence adduced at the two-day hearing and the totality of the circumstances in reaching its factual findings and its legal conclusions . . . that [López] did not intend to defraud his creditors and the estate suffered no loss as a result of the pre-petition transfers." In re López-Muñoz, 553 B.R. at 193. Accordingly, USIC is wrong in contending that the Bankruptcy Court failed to consider circumstantial evidence or the Marrama factors.

USIC next contends that the Bankruptcy Court erred for another reason. USIC points to López's statement to the Bankruptcy Court -- made in his proposed findings of fact and conclusions of law following the evidentiary hearing -- that López transferred the Mayagüez station to HSGC and the HGSC shares into the La Familia Trust in order to "protect his assets from the aggressive collection actions of just one unsecured creditor." In re Muñoz, 544 B.R. at 276. USIC contends that López's admitted intent to "protect" these "assets" from a creditor is precisely the intent

- 26 -

required to show that López engaged in fraud for purposes of 11 U.S.C. § 1104(a)(1). And thus, USIC contends, appointment of a trustee of the bankruptcy estate was required under § 1104(a)(1) in consequence of that admission by López regarding his intent.

But, USIC did not make this argument to the Bankruptcy Court. USIC argued to the Bankruptcy Court only that López did not in fact have the motivation to make the transfers that he claimed to have had in his proposed findings of fact and conclusions of law. Thus, this argument is waived. See Hoover, 828 F.3d at 11; In re Woodman, 379 F.3d 1, 3 n.1 (1st Cir. 2004).[6]

We note that, in addition to the fact that neither the Bankruptcy Court nor the BAP considered this issue, USIC identifies no clear authority, from this court or from any other court, that supports the proposition that López's claimed motivation with respect to actions taken in response to the collection efforts of

---

[6] In pressing this contention, USIC relies on Husky, which does not address § 1104(a)(1) and what constitutes fraud under it. Husky held that "fraud" within the meaning of § 523(a)(2)(A), which, as we noted, limits the debtor's ability to discharge certain debts, need not involve a false statement. 136 S. Ct. 1585. While Husky was not decided until 2016, and was therefore unavailable for USIC to rely on in its briefing to the Bankruptcy Court, our circuit had already reached the same conclusion in In re Lawson, 791 F.3d 214, 220 (1st Cir., July 1, 2015), which was published prior to USIC's briefing to the Bankruptcy Court. Thus, USIC could have raised an argument based on Lawson to the Bankruptcy Court.

- 27 -

one creditor for the benefit of other creditors automatically makes his transfers fraudulent for purposes of § 1104(a)(1).[7]

USIC's last argument with respect to its challenge to the Bankruptcy's Court's ruling denying the motion to appoint a creditor pursuant to § 1104(a)(1) is as follows. USIC contends that the Bankruptcy Court reversibly erred by not determining that López committed fraud through a "pattern of omissions and misrepresentations" that were "aimed at concealing" not only the

---

[7] In arguing that the law is clearly in its favor, USIC relies primarily on Husky. There, however, the Court held only that the phrase "actual fraud" under 11 U.S.C. § 523(a)(2) did not impose the requirement that a false statement have been made in order for a fraudulent conveyance to qualify as actual fraud. 136 S. Ct. at 1588. Thus, Husky does not resolve the question we confront here concerning whether López's statements concerning his reasons for making the transfer at issue reveal that the transfer was an act of fraud under § 1104(a)(1). Nor is the lower court authority on which USIC relies -- none of which involves a motion to appoint a trustee under § 1104(a)(1) -- clear as to whether an intent to make a transfer to protect the interests of many creditors from the aggressive collection efforts of one creditor is automatically a fraudulent intent for purposes of § 1104(a)(1). USIC relies chiefly on In re Villani, 478 B.R. 51 (1st Cir. BAP 2012) and In re Barry, 451 B.R. 654 (1st Cir. BAP 2011), two cases applying 11 U.S.C. § 727(a)(2)(A), which limits the bankruptcy court's authority to grant the debtor a discharge if the debtor transferred property with "intent to hinder, delay, or defraud a creditor." In Barry, however, the bankruptcy court evaluated the totality of the circumstances before finding that the debtor acted with the requisite intent under § 727(a)(2)(A), rather than finding that the debtor's stated intent to pay one creditor automatically constituted an intent to hinder, delay, or defraud a creditor. 451 B.R. at 659-62. And, in Villani, the panel held that a debtor's purported justification of paying some creditors does not bar a finding that the debtor also acted with the intent to hinder, delay, or defraud other creditors; we did not hold that an intent to pay some creditors is necessarily an intent to commit fraud. See 478 B.R. at 61.

transfer of the Mayagüez station to HSGC and the transfer of the HSGC shares to the La Familia Trust but also the existence of the leases to Puma.  Our review of this claim is for clear error, as USIC challenges both the Bankruptcy Court's factual finding that López had presented acceptable explanations for his omissions and factual misstatements, and the Bankruptcy Court's factual finding that these omissions and misstatements were not made with the intent to conceal the transfer of the Mayagüez station to HSGC (and the attendant revenue from the lease of that station to Puma) or the transfer of the HSGC shares to the La Familia Trust. However, as the BAP explained:

> The [bankruptcy] court declined to make the inferences USIC argued should be made because of what [USIC] maintained was deliberate concealment of material information and misleading information by the Debtor from the outset of the case.  The testimony of the Debtor and CPA Barroso adequately support the bankruptcy court's contrary findings and conclusions that USIC failed to prove its contentions.  Again the court found reasonable the Debtor's explanation for the incorrect listing of the dates of the transfers in the statement of financial affairs as an unintentional mistake which he corrected in the disclosure statement.  It also accepted as credible the Debtor's testimony that in completing his schedules and statement of financial affairs and discussing the value of [HSGC] at the Creditor's Meeting he had relied on an amended 2010 financial statement showing a negative value for [HSGC].  And the Debtor emphasized that immediately after he rescinded the transfers, he amended his schedules and the disclosure statement to include the [Mayagüez] Station, the Puma lease, the [HSGC]

> shares, the rental income from the [Mayagüez]
> Station, and the operating expenses associated
> with the administration of the Puma and [HSGC]
> leases, and attached copies of the rescission
> deed and the Puma leases as exhibits to the
> latter. USIC did not submit evidence that
> would cause us to conclude that the court's
> credibility assessments and factual findings
> were clearly erroneous.

In re López-Muñoz, 553 B.R. at 194. Thus, USIC's argument on this front also fails, given the deference we owe the Bankruptcy Court on credibility findings regarding intent. See Carp, 340 F.3d at 25.[8]

---

[8] In pressing this challenge, USIC does point to the Bankruptcy Court's statement that "the debtor's counsel informed [the Bankruptcy Court] that the debtor 'receives rental income from two real estate properties that are being leased'" at a status conference. In re Muñoz, 544 B.R. at 273. USIC argues that the Bankruptcy Court erroneously interpreted that statement by debtor's counsel to be a disclosure of the rental income from Puma, whereas the statement was actually a reference to rental income that the debtor received from other properties. But, nothing in the Bankruptcy Court's opinion indicates that the Bankruptcy Court was under that mistaken impression. And, even assuming that USIC is correct regarding which lease income was being referenced by López's attorney at that status conference, USIC points to no support in the record for the proposition that López's failure to disclose the Puma lease income was not an honest mistake -- and certainly none that can overcome the weight of the Bankruptcy Court's decision to credit López's explanation of why he failed to appropriately disclose all of the facts surrounding the two transfers at issue. See Carp, 340 F.3d at 25 ("Because the determination of intent depends largely on an assessment of the debtor's credibility, respect for the bankruptcy court's factual findings is particularly appropriate in this context.").

**B.**

USIC also argues that the Bankruptcy Court erred in finding that the appointment of a trustee would not be in the "interests of creditors," which is the standard for appointment of a trustee under § 1104(a)(2). USIC argues in this regard that, contrary to the Bankruptcy Court's finding, the bankruptcy estate has a turnover cause of action against HSGC for the lease income that HSGC received from Puma pursuant to Puma's lease of the Mayagüez station from HSGC during the period of time between López's transfer of the Mayagüez station to HSGC and López's execution of a rescission of that transfer. And, USIC contends, it is the consensus among federal courts that the appointment of a trustee is in the best interests of the creditors when the principals of the debtor are also the principals of other transferee companies against whom the estate has a "potential cause of action."

The turnover cause of action exists because, USIC argues, "[u]nder Puerto Rico law, rescission obliges the return of the things which were the objects of the contract, with their fruits and the price with interest." And, USIC contends, the rescission that López executed was incomplete, because HSGC, in the rescission of the transfer of the Mayagüez station to HSGC, did not return the lease revenue that HSGC received from Puma pursuant to Puma's lease of the Mayagüez station during the period of time that HSGC owned the Mayagüez station. Thus, USIC argues, in virtue of the

incomplete rescission, the bankruptcy estate has a turnover cause of action against HSGC to recover that revenue.

USIC did argue to the Bankruptcy Court that the bankruptcy estate had a cause of action for the turnover of $119,500 plus interest -- which was the difference between the mortgage cost of the Mayagüez station and the revenue that HSGC received from Puma under the lease of the Mayagüez station to Puma, during the time that HSGC owned the Mayagüez station. But, the Bankruptcy Court did not dispute that, if HSGC did retain a surplus from the Mayagüez station pursuant to the lease of that station to Puma during the period that HSGC owned the Mayagüez station, then the estate would have a turnover cause of action against HSGC to recover that surplus. The Bankruptcy Court instead simply determined, based on the testimony by CPA Barroso, who concluded that all the lease revenue was "used to pa[y] the . . . mortgage, to pay the minimum . . . operating expenses that they have, and their rent to Mr. Pedro López," that there was no surplus for HSGC to turn over. In re Muñoz, 544 B.R. at 274-75, 277. The Bankruptcy Court also relied, in making that finding, on the fact that the expert witness provided by USIC, CPA Pérez, stated that he had "no basis to . . . reach a conclusion" regarding Barroso's testimony that the transfer of the Mayagüez station did not have a material impact on the estate. Id. at 275. As the Bankruptcy Court explained, "there was no surplus owed by [HSGC] to the estate for the period [HSGC]

- 32 -

operated the debtor's gas station since [HSGC] paid the debtor's mortgage . . ., assumed the operating expenses of the lease, and paid the salary and rent to the debtor." Id. at 274.

It is unclear whether, on appeal to us, USIC means to challenge the Bankruptcy Court's factual finding that no surplus exists. But, to the extent that USIC does so, that challenge fails. Our review of that finding is only for clear error, and the Bankruptcy Court supportably found, based on the testimony of Barroso, that there was no surplus. Nor does USIC point to anything in the record that sufficiently undermines that conclusion.

USIC does contend to us, however, that various provisions of the Bankruptcy Code precluded the Bankruptcy Court, as a matter of law, from concluding that there was no surplus. As USIC puts it, "[i]n essence, [the Bankruptcy Court] found that the estate and [HSGC] owed mutual debts to each other," the mutual debts being that HSGC owed the bankruptcy estate the lease revenue (after deducting the value of the monthly mortgage payments for the Mayagüez station) and that the bankruptcy estate owed HSGC the operating expenses of the "administering the lease." And, USIC goes on, the Bankruptcy Court found that "the amounts allegedly owed by the estate to [HSGC] due to so-called 'expenses of administering the lease' were greater than those owed by [HSGC] to the estate due to return of rents. Therefore, it concluded that

- 33 -

HSGC was entitled to offset them and keep the difference."  But, USIC contends, various provisions of the Bankruptcy Code prohibited the Bankruptcy Court from so ruling.

Specifically, USIC relies on 11 U.S.C. § 362(a)(7), the provision of the Bankruptcy Code that extends the automatic stay in bankruptcy to setoff actions against the debtor.  USIC argues, in this regard, that the setoff of the lease expenses against the "so-called 'expenses of administering the lease' was forbidden by the automatic stay" because HSGC "never sought, let alone, was granted relief from the automatic stay by the bankruptcy court to take a setoff."  USIC also contends that this "offset" of expenses was prohibited by 11 U.S.C. § 503(a) and (b), the provisions of the Bankruptcy Code that control the payment of administrative expenses.  USIC argues in this regard that "only parties who timely file a request for administrative expenses to the bankruptcy court can be allowed to recover them against the estate after notice and a hearing," but HSGC "never filed before the bankruptcy court, let alone was granted, any request for administrative expenses." Finally, USIC argues that the operating expenses for the administration of the leases could not have been approved as administrative expenses under § 503(b)(1)(A), as that provision only allows the payment of "actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), and the operating expenses were not "necessary" costs.

Whatever the force of these arguments, USIC never made any of them to the Bankruptcy Court. In arguing that the bankruptcy estate had a turnover action against HSGC, USIC did challenge CPA Barroso's treatment of these expenses. But, in doing so, USIC never identified the various provisions of the Bankruptcy Code that it now invokes as a legal bar to the consideration of the operating expenses in determining whether there existed a surplus, and therefore whether there existed a turnover cause of action against HSGC. Thus, we reject USIC's newly raised arguments regarding these provisions of the Bankruptcy Code as waived.[9] See Hoover, 828 F.3d at 5.

Finally, USIC contends that the Bankruptcy Court's statement that HSGC's lease revenue from Puma was "free and clear of any operating expenses" constitutes a finding that HSGC had no

---

[9] USIC does now also contend that the Bankruptcy Court erred in deducting the operating expenses because those expenses were "completely unrelated to the sales deed" -- presumably, the sales deed transferring ownership of the Mayagüez station -- and therefore did not have to be returned pursuant to the rescission. But, as with its other contentions, USIC did not actually argue below that the operating expenses were unrelated to the deed, and therefore that the Bankruptcy Court could not take them into account in analyzing what HSGC was obligated to return under the deed of rescission, so we reject it as waived as well. Additionally, USIC points to no support -- either in the record or in Puerto Rico law -- that the operating expenses taken into account by the Bankruptcy Court were sufficiently "unrelated" to the deed such that the Bankruptcy Court was not permitted to incorporate those operating expenses into the determination of what HSGC was required to turn over to the estate pursuant to the deed of rescission.

operating expenses other than the mortgage payments that were owed for the mortgage on the Mayagüez station.  This contention also fails.  The Bankruptcy Court concluded that the lease was free and clear of operating expenses in that the lease did not oblige HSGC to pay any of Puma's expenses in operating the gas station.  In re López-Muñoz, 544 B.R. at 272.  The Bankruptcy Court did not find that HSGC had no operating expenses associated with administering the lease.  Thus, there is no internal contradiction in the relevant findings by the Bankruptcy Court.[10]

## III.

For the foregoing reasons, the order of the Bankruptcy Court is **affirmed**.

---

[10] USIC also contends that the estate may have an action to recover the profits from the Hormigueros station, which belonged to HSGC during the entire relevant period, due to the fact that the HSGC shares were in the trust for several months.  But, as USIC appears to acknowledge, the fact that the HSGC shares were in the trust for a period of time would only injure the estate if profits from HSGC were disbursed to the trust during that period. And, USIC points to no support in the record for its claim that HSGC profits were disbursed to the trust.